**Walter R. CARRINGTON, Appellant,**

**v.**

**David HART, Appellee.**

**No. 14468.**

Court of Appeals of Texas, Austin.

Jan. 29, 1986.

Mark Cohen, Austin, for appellant.

Larry F. York and J. Scott Howard, Baker & Botts, Austin, for appellee.

Before SHANNON, C.J., and GAMMAGE and CARROLL, JJ.

CARROLL, Justice.

Walter R. Carrington appeals from a directed verdict granting David Hart specific performance of a contract for the sale of a tract of land in Travis County. We will affirm the judgment of the trial court.

## THE CONTROVERSY

1. *The Land.* This case involves 283 acres in southwest Travis County Carrington purchased in the spring of 1983 for $2,000 per acre. Carrington immediately began trying to sell the property, and on October 6, 1983, he listed the property for sale at $5,000 per acre with Paragon Brokers of Austin. The listing agreement called for owner financing with a twenty percent down payment and the balance "at eleven percent interest for 12 years."

At about the same time, Hart, who was interested in purchasing property in Travis County, contacted Bernard Snyder, a broker at Paragon Properties. Hart arranged for Snyder to act as his trustee in locating and purchasing property in Travis County.

2. *The Negotiations.* A few days later, Snyder learned that the Carrington property had been listed for sale. Hart approved an offer for the property, and on October 12, Snyder as trustee signed a proposed earnest money contract which was then presented to Carrington.

Carrington signed the proposed earnest money contract after making certain changes, and returned the proposal as a counter-offer. Snyder in turn agreed to some of the proposed changes, modified others and returned the October 12th draft as changed to Carrington. Carrington agreed to Snyder's modifications and initialled the changes to indicate his approval.

The parties decided to prepare a "clean copy" of the contract, so Carrington voided his signature, added the phrase "subject to final contract signed and accepted by Buyer and Seller within above 14-day free look provision acceptable to Seller," and returned the contract to Snyder.

The contract was retyped to reflect all of the changes made during the initial negotiations. On October 14, Snyder signed and dated the "clean copy" of the proposal which was presented to Carrington on October 18. At that point, Carrington deleted a provision allowing partial releases of tracts and added under "special conditions" paragraph 16, again containing "subject to" language. Snyder promptly accepted the October 18 changes and additions made by Carrington and initialled the changes to confirm his acceptance.

Paragraph 16 of the final version of the contract reas as follows:

16. Subject to final contract signed and accepted by Buyer and Seller within the above 14-day feasibility study period.

3. *Repudiation of Contract by Carrington.* On November 3, 1983, Carrington sent a mailgram to Paragon Properties stating "[t]he 14-day feasibility study period has passed and I do not have a final contract in my possession ... therefore the sale is off and the preliminary contract is void."

### ACTION IN THE DISTRICT COURT

Snyder, as trustee for Hart, immediately filed suit against Carrington for specific performance. Hart later amended the original petition, and pled additional and alternative causes of action dealing with "fraud in a real estate transaction" and "deceptive trade practices." The amended petition also contained a claim for attorney's fees.

At the conclusion of all the evidence in the case, Hart successfully moved for a directed verdict granting him specific performance of the contract and denying Carrington any relief on his counterclaim charging Hart with bad faith in bringing a groundless deceptive trade practice claim.

### CONTENTIONS ON APPEAL

Carrington brings twenty-one points of error. He complains generally that the trial court erred: 1) in granting specific performance; 2) in awarding Hart attorney's fees; and 3) in denying him relief on his counterclaim against Hart for bringing a groundless deceptive trade practice claim.

1. *Specific Performance of Contract.* All of the points of error dealing with specific performance rest on Carrington's interpretation of paragraph 16 of the contract. Carrington argues that by inserting paragraph 16 he intended to render the document unenforceable, and that "the evidence clearly shows that when Snyder kept changing the contract Carrington decided not to be bound thereby." The trial court disagreed and held that the contract was a valid binding agreement as a matter of law. We agree.

■ The construction of a written instrument is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515 (Tex. 1968). While Carrington now asserts that he never intended to be bound by the earnest money contract, a reviewing court is obligated to give effect to the parties' intent as expressed in the writing. Further, the court should consider the wording of the instrument in light of the surrounding circumstances. *Id.*

The negotiations between the parties began on October 12 and continued almost daily until October 18 when the final "clean copy" was signed. Numerous changes, corrections and additions were made to the contract during this time, but the basic plan never changed: Carrington offered to

sell the property for $5,000 per acre and to provide owner financing with a 20% down payment and the balance at 11% for 12 years. These provisions began in the October 6 listing agreement, continued throughout the negotiations, and are found in the final contract.

While the earnest money contract form used by the parties is no model of draftsmanship, it does contain all essential terms for the sale of the property. Further, the terms are expressed so that a reviewing court can determine with reasonable certainty the duties of each party. Absolute certainty is not required. *Langley v. Norris*, 141 Tex. 405, 173 S.W.2d 454 (Tex. 1943).

■ Carrington argues inconsistently, first, that paragraph 16 *clearly* renders the contract *unenforceable*, and next, that the same paragraph is *ambiguous* and renders the contract *meaningless*. Whether a provision of a contract is ambiguous is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980).

■ Courts should strictly construe a provision in a contract against the party inserting the language. *Republic National Bank v. Northwest National Bank*, 578 S.W.2d 109 (Tex.1978). Carrington inserted paragraph 16 into the contract. The paragraph can reasonably be read to provide for the modification of the contract by agreement of the parties within the 14-day feasibility study period rather than as a nullification of the entire contract.

■ Having determined that the contract between the parties was unambiguous and specifically enforceable, the trial court correctly granted Hart's motion for directed verdict and ordered specific performance. All of Carrington's points of error dealing with specific performance are overruled.

2. *Award of Attorney's Fees.* In addition to ordering specific performance of the earnest money contract, the trial court awarded attorney's fees to Hart pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226 (Supp. 1985).[1] Carrington attacks the award of attorney's fees upon two grounds, first arguing that Hart failed to make a proper "presentment" of his claim prior to filing suit, and next that the amount of attorney's fees is unreasonable. We will first discuss Carrington's attack on the reasonableness of the attorney's fees.

Disciplinary Rule 2–106(B) of the Texas Code of Professional Responsibility is styled "Fees for Legal Services" and sets out specific factors to be considered as guides in determining the reasonableness of a fee for legal services. These guides include the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the amount involved and the results obtained. Tex.Rev.Civ. Stat.Ann. art. 320a–1, Title 14 App., Art. 12 § 8 (1973).

This cause involved millions of dollars worth of property. Hart's attorneys devoted over 400 hours to developing, preparing and successfully trying the case. The record also shows that the total fee actually charged Hart was $58,000 while the trial court awarded only $40,000.

■ In considering the amount of money involved, the time devoted by the attorneys to the suit, and the other factors set forth under Disciplinary Rule 2–106, we cannot conclude that the trial court abused its discretion in awarding these fees. Carrington's point of error dealing with the reasonableness of attorney's fees is overruled. *Paulus v. Lawyers Surety Corp.*, 625 S.W.2d 843 (Tex.App.1981, writ ref'd n.r.e.).

The sufficiency of the presentment of Hart's claim raises a more difficult question. Carrington contends that filing suit was Hart's only presentment of the claim, and that merely filing suit is not adequate presentment to support the award of attor-

1. Article 2226 was codified without substantive revision and is now found in Tex.Civ.Prac. & Rem.Code § 38.001, *et seq.* (Supp.1986).

ney's fees. It is undisputed that there was no formal written "demand letter" from Hart to Carrington prior to the filing of the original suit for specific performance. Therefore, we must determine if, under the facts of this case, Hart adequately presented his claim to Carrington so as to authorize an award of attorney's fees under article 2226.

No particular form of presentment is required by art. 2226, and the statute specifically provides that it shall be liberally construed to promote its underlying purposes. The purpose of presentment is to inform the defendant that a claim is asserted, and to allow such defendant an opportunity to pay the claim or to perform as required and to thereby avoid incurring an obligation for attorney's fees. *Jones v. Kelly*, 614 S.W.2d 95 (Tex.1981). In this appeal, Carrington cannot seriously contend that he was unaware that Hart was asserting a claim for specific performance in the sale of the real property.

The suit as originally filed sought specific performance only, made no claim for attorney's fees, and was filed the day after Carrington repudiated the contract. We have found no Texas decision holding that the filing of a suit *alone* constitutes presentment of a claim so as to entitle a plaintiff to attorney's fees under art. 2226, and we do not so hold. However, in this appeal, we are faced with an anticipatory breach of a sales contract by a defendant as well as a legitimate need to promptly file suit in order to record a *lis pendens* notice. Moreover, notice and "presentment" of the claim were given to Carrington in several ways before filing the *amended petition* seeking attorney's fees as additional relief.

Hart sent a letter to Carrington notifying him of the date of closing *after* the *original* petition was filed, but more than 30 days *before* the amended petition was filed. Additionally, Hart testified that he orally offered to pay cash to Carrington to go ahead and close the deal on the property. Finally, Hart forwarded a demand letter to Carrington and his attorney stating Hart's claim for specific performance and alternatively asserting a claim for deceptive trade practices in real estate fraud. This letter included a demand for attorney's fees, and while not introduced into evidence, it was attached to Hart's amended original petition and was a part of the case file.

The question of attorney's fees was submitted to the trial court by agreement, thereby taking the question of attorney's fees away from the jury. Under these circumstances, the trial court is permitted to take judicial notice of the entire case file, including this demand letter.

We hold that the presentment requirements of art. 2226 have been satisfied under the facts of this case, and Carrington's point of error challenging the adequacy of the presentment of Hart's claim is overruled.

## DENIAL OF COUNTERCLAIM FOR DAMAGES BASED ON GROUNDLESS DECEPTIVE TRADE PRACTICE CLAIM

By counterclaim, Carrington charged Hart with bad faith in asserting a groundless deceptive trade practice claim. At the close of all the evidence, the trial court made a specific finding of no bad faith, denied Carrington any relief on this claim, and refused to submit any issues to the jury on the question of bad faith.

In point of error seventeen, Carrington contends that the evidence established *as a matter of law* that Hart's deceptive trade practices claim was groundless and was filed in bad faith or for the purpose of harassment. We disagree. A careful review of the record shows no evidence whatsoever of bad faith or harassment in asserting the deceptive trade practices claim. Further, we cannot conclude that the suit was groundless.

In contrast, in his tenth point of error, Carrington maintains that the evidence raised *a fact issue* for determination by the jury as to whether Hart brought his deceptive trade practice claim in bad faith or for harassment. In support of this point of

error, Carrington argues "[I]t is now clear that issues of bad faith and harassment are for the jury even if the DTPA claim is dismissed."

The Texas Deceptive Trade Practices Act is found in Tex.Bus. & Comm.Code Ann. §§ 17.41 *et seq.* (Supp.1985). Section 17.-50(c) provides that "[o]n a finding by *the court* that an action ... was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant ... attorneys' fees ..." (emphasis added).

Despite this clear statutory provision assigning to the *court* rather than to the jury the responsibility for determining whether an action was groundless and brought in bad faith or for the purpose of harassment, a number of decisions have held that the court determines whether a suit is groundless, but the jury determines whether the suit was brought in bad faith or for the purpose of harassment. *See Parks v. McDougall,* 659 S.W.2d 875 (Tex.App.1983, no writ); *LaChance v. McKown,* 649 S.W.2d 658 (Tex.App.1983, writ ref'd n.r.e.); *Computer Business Services, Inc. v. West,* 627 S.W.2d 759 (Tex.App.1981, writ ref'd n.r.e.). However, the validity of this line of cases has been questioned by the Supreme Court's decision in *Leissner v. Schott,* 668 S.W.2d 686 (Tex.1984), where the Court expressly reserved judgment on whether *all* the findings required by § 17.50(c) must be made by the trial court.

In any event, it is clear in all of the cited cases that the threshold question to be answered by the trial court is whether the deceptive trade practice claim was *groundless.* In this appeal, the trial court determined that the deceptive trade practice claim asserted by Hart was not groundless and went on to make a specific finding of no bad faith. We believe the record adequately supports the trial court's determination.

If we assume the questions of bad faith and harassment are for the jury to decide, to support submission of such a special issue there must have been more than a mere scintilla of evidence favorable to the submission of the issue, disregarding all contradictory evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Even when viewed most favorably to the position taken by Carrington, we find nothing in the record to support the submission to the jury of a question dealing with bad faith or harassment. Carrington's tenth and seventeenth points of error are overruled.

The judgment of the trial court is affirmed.