Dewitt L. LACY, Appellant,

v.

**FIRST NATIONAL BANK OF LIVINGSTON, TEXAS,** Appellee.

No. 09–90–099 CV.

Court of Appeals of Texas, Beaumont.

May 9, 1991.

Bill Jones, Livingston, for appellant.

Tom Brown, Livingston, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

In the proceeding below, the First National Bank of Livingston, Texas (First Bank), as plaintiff, brought suit against Dewitt L. Lacy (Lacy), the defendant, seeking to obtain a judgment for a certain deficiency which remained after the sale of collateral. The collateral had been given to secure a certain promissory note. The briefs acknowledged that no jury had been demanded and that all issues of fact as well as of law were affirmatively submitted to the trial judge. After a full hearing on the merits, First Bank was awarded a judgment against Lacy for debt in the amount of $16,430.00, prejudgment interest of $9,587.12, and attorney's fees of $675.00. Court costs and interest after the signing and entry of the judgment was also provided for. The trial court filed certain findings of fact separate from certain conclusions of law, pursuant to the rule.

Lacy brought forward and argues seven points of error. Point one is that the trial court committed reversible error in admitting into evidence the Plaintiff's Exhibit Number Two because the waiver of notice had not been specifically pleaded by First Bank.

In the bench trial, one of the first offers of evidence was a request for admission that the document marked Exhibit A and attached to the request for admissions was and is a true and genuine copy of a promissory note executed by Lacy. The answer to that request was "admitted". First Bank's Exhibit Number One, being the same as Exhibit A, was admitted. No objection was leveled. It was admitted that First Bank had delivered a valuable exchange for the promissory note. It was admitted that by the execution of the promissory note Lacy unconditionally promised to pay $20,622.66 to the order of First Bank. The final request for admission was numbered five. It read in substance that except as alleged and set out in the First Bank's original petition in this suit, no payments had been made to retire the principal or accrued interest on the promissory note. The answer was "yes, admitted".

The first contested piece of evidence was a document identified as Plaintiff's Exhibit Number Two. It was a letter signed by Dewitt Lacy dated April 15, 1987. It was addressed to the First National Bank of Livingston in re Note Number 537142. The letter was not lengthy. The letter of April 15, 1987, stated that Lacy had been notified that he was in default on the payment of the note and/or the security agreement, both of which were covered by certain following described property called collateral. Generally, the property was a 1981 Ford ¾ ton pick-up truck with identification number, a Triggs horse trailer with a specific serial number, and a Klosel horse trailer with a specific serial number. In the said letter, Lacy unequivocally and voluntarily gave up any right that he might have to further notice and to a hearing. Lacy had recited in capital letters that he knew he may have a constitutional right to a court hearing to determine whether he was in default and whether First Bank was entitled to the possession of the collateral at the time of the letter. The letter recited that Lacy thereby delivered possession of the above described collateral to the bank. The collateral was described with intensive specificity. Further, Lacy wrote:

> I agree that you have the right to sell it totally and finally pursuant to the terms of the security agreement between us without any further obligation from you [First Bank] to me [Lacy]. I agree that I am responsible to you for any part of the debt that remains unpaid after the sale of this collateral.

I have removed all of my other personal property from the collateral.

Signed this 15th day of April, 1987.

/s/ Dewitt Lacy

Dewitt Lacy

The sole objection to the introduction of this Plaintiff's Exhibit Number Two was that it had not been specifically pleaded. The execution of the letter was not challenged, nor was Lacy's complete knowledge of the letter and the contents. The contents therein were not disputed.

The letter waived any further obligations from First Bank to Lacy. An official of the bank personally saw Lacy execute the document, being the letter, Plaintiff's Exhibit Number Two. The objection of Lacy was based on no specific pleadings. In First Bank's pleading, the security agreement or note is referred to. Also, First Bank alleged that it was authorized by the security agreement to repossess the collateral and that the collateral was sold on June 3, 1987. The resulting net sales proceeds of $3,600 were raised. Attached to the Plaintiff's Original Petition was an Exhibit, being Exhibit A. It was a security agreement and made a part of the Plaintiff's Original Petition. The note and security agreement provide as follows:

DEFAULT—I will be in default on this note and any agreement securing this note if any one or more of the following occurs:

(a) I fail to make one or more payments on time on in the amount due;

. . . .

(c) I fail to keep any promise contained in this note, any agreement securing this note, or any other written agreement with you;

. . . .

(i) any fact appears or event occurs that causes you to consider yourself insecure, or the prospect of payment, performance, or realization on the collateral is impaired.

If any of us are in default on this note or any security agreement, you may exercise your remedies against any or all of us.

REMEDIES—If I am in default on the note or any agreement securing this note, you have the following remedies:

. . . .

(d) You may use any remedy you may have under state or federal law.

(e) You may use any remedy given to you under any agreement securing this note.

There is a separate and distinct paragraph in the security agreement generally entitled "DEFAULT AND REMEDIES". DEFAULT AND REMEDIES provides:

I will be in default on this agreement if any event specified in the "Default" paragraph of the note occurs. If I am in default on this agreement or on any secured obligation, you have all of the remedies provided in the note or other obligation and all of the remedies provided below and by law. You may:

. . . .

(c) take immediate possession of the property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may then sell, lease or dispose of the property, as provided by law. . . . [Y]ou may obtain a deficiency judgment if the proceeds do not satisfy the debt.

■ We conclude that the pleadings of First Bank, including the Exhibit, was adequate to permit the introduction of Plaintiff's Exhibit Number Two, the letter of April 15, 1987. Lacy knew of the letter he signed directed to the bank. The pleadings are sufficient to state a cause of action. No special exceptions were leveled. The pleadings set forth that First Bank could pursue any remedy it had under the security agreement or that it had by law. The First Bank's pleadings are entitled to all reasonable entendments. But we conclude that resort to the entendment rule is not necessary. The trial court below specifically found and held that the pleadings would support the admission of the waiver document, Plaintiff's Exhibit Number Two. We agree with the trial judge. We view the pleadings and the exhibits as giving fair notice of the claim involved. Absent special exceptions, First Bank complied

with TEX.R.CIV.P. 47. Again, we find no special exceptions in the pleadings of Lacy.

■ We conclude that our immediately preceding ruling is sufficient in and of itself. However, we point out that in a determination of whether issues and pleadings and questions are supported by the pleadings at the trial level, the trial court will supply omissions in the pleading of one party by referring to the allegations contained in the pleadings of another party. *Land Title Co. of Dallas v. F.M. Stigler, Inc.*, 609 S.W.2d 754 (Tex.1980); *Whittington v. Glazier*, 81 S.W.2d 543 (Tex.Civ.App.—Texarkana 1935, *writ ref'd*). Point of error number one is overruled.

■ Appellant's points of error two and three are that there is no evidence in the record to support the verdict of the trial court that the plaintiff's sales of the goods were commercially reasonable and, independently, that the evidence is insufficient to support the concept that the plaintiff's sales of the goods were commercially reasonable. Lacy briefs points of error two and three together. There is evidence in the record of affirmative probative force and valuation that the note matured in middle March 1987, and therefore, the letter of April 15, 1987, was subsequent to the maturing of the note. The Appellant voluntarily surrendered the property to First Bank. The property surrendered was the entirety of the three elements of collateral. After the voluntary surrender of all the collateral, the collateral was placed on the west side of the bank where there was a heavy traffic flow. "For Sale" signs were placed on the collateral. Bids were taken. There were numerous bids taken. Probably at least eight in number. Bids were taken for a period of time of about a month and a half. The collateral was sold to the highest bidder.

There is definite evidence the truck was in bad shape. It had in excess of 100,000 miles of use and mileage on it. The two trailers were used trailers. They were not new trailers. They did not have a recent paint job on them. The trailers had scratches and other defects. The highest bid received was $3,600.00 which was applied to the balance due on the note. After the deduction the record reflects cogent evidence that the remaining principal due and owing on the note was $16,430.00. After computation, the interest on the note as of time of trial was $9,587.12. Hence, as of the date of trial, there was affirmative probative evidence that the total amount due and owing by Lacy to First Bank was $26,017.12.

The First Bank was the present legal owner and holder of the note. Other than the credit for the collateral, there had not been any payments whatsoever made upon the principal of this note, according to the bank's records and the record before us. The total amount immediately stated above was still due and owing directly to First Bank. Again, the collateral was placed in a position to face a major highway. The highway was a major thoroughfare through Livingston. The collateral was on a lot having the most exposure to the public and the public traffic. Lacy saw the collateral on the lot. He made no protest. Interested persons would and could see the collateral and inspect the collateral. They were at liberty to come into the bank and make written bids. This collateral was sold in the same manner as many other pieces of collateral had been sold by the bank. This method of sale was used on all of the automobiles that the bank had apparently repossessed and sold. Again, there is testimony that the lot where the collateral was placed had the most exposure. The method of sale of the collateral was the normal practice.

The trial court found that the collateral was disposed of in a commercially reasonable manner. We agree under this record.

■ The findings of fact of the trial judge, who had a chance to observe the actual demeanor and actions, tone of voice and mannerism of all the witnesses, are of a very high dignity. According to some decisional law, they are of an equal dignity with jury answers to special questions or issues. *See National Pump Co., Inc. v. C & L Mach. Co., Inc.* 565 S.W.2d 331 (Tex. Civ.App.—Amarillo 1978, *no writ*). When an intermediate appellate court considers

no evidence points or legal insufficiency points, we are permitted to consider only the evidence favorable to the findings below. If there is any probative evidence in the record to support the trial judge's findings, we are not to overrule them. *See Ray v. Farmers State Bank of Hart*, 576 S.W.2d 607 (Tex.1979). The acceptable and universally recognized standard for review of factual sufficiency points requires that we consider the whole record. We have done so. A trial court's findings should be sustained unless, considering all evidence, the intermediate appellate court determines that the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust and clearly wrong. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler 1966, *writ ref'd n.r.e.*); R. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960); W. Garwood, *The Question of Insufficient Evidence on Appeal*, 30 TEXAS L.REV. 803 (1952). Following the accepted standards of intermediate review and after reviewing the entire record, we overrule Appellant's points of error number two and three.

Lacy testified for the defense. He said the horse trailers were about six years old. He had not bought one of them new. He did not know how many miles were shown on the odometer of the pick-up truck. Lacy had seen the collateral on the lot next to the bank. He did not complain to anyone in the bank about the way the collateral had been placed for the purpose of selling it or obtaining bids on the collateral. He said, however, that he did complain to himself, but that, nevertheless, he did not complain to anyone in the bank. Lacy acknowledged on cross-examination that he had signed the note and that he had not made any payments on the principal of the note. Lacy had made the interest payments only. Lacy acknowledged that the note came due on March 15th and he did not pay it. Lacy was the only witness for the defense. The trial judge had the right and duty to weigh his testimony and credibility and to analyze his answers. The trial judge, sitting without a jury, could have weighed the fact that Lacy, of course, was an interested witness. This gave the trial judge very broad latitude in the weighing of Lacy's testimony.

■ It does not seem to us that the testimonies on the attorney's fees issue was seriously challenged. The amount of time employed and the other efforts of the attorney or attorneys for the First Bank, we perceive, were not seriously questioned. The cross-examination on this point was minimal.

The record reflects clearly that the testimony concerning the attorney's fees was not proffered as expert testimony. It was a mere recital of the hours and efforts expended on the case. The evidence was factual. We simply find no error in the awarding of the attorney's fees in this case which were also reasonable and necessary. TEXAS CIVIL PRACTICE & REMEDIES CODE and portions thereof, especially Section 38.004, permit certain recoveries in a bench trial. See, TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986). This section permits the trial court to take judicial notice of the contents of the official file before the trial court and the usual, customary and reasonable attorney's fees. The usual and customary fees are also presumed to be reasonable. TEX.CIV.PRAC. & REM.CODE ANN. § 38.003 (Vernon 1986). In this record the Appellee's attorney offered himself as a lay, fact witness only. He did not express an expert opinion. He did express specifically the time that he had expended and for which he had billed First Bank. He did testify as a fact witness as to what had been paid to counsel. The testimony offered was factual testimony. We conclude that if there was any error on the issue of attorney's fees that such error was harmless under this entire record. However, we wish to make it clear that we do not think the trial court erred. We further conclude that sufficient evidence of strong probative force was presented to allow the court to calculate the amount of prejudgment interest.

.

We have reviewed and analyzed the findings of fact and the separately filed conclusions of law. The findings of fact are nine in number and the conclusions of law are four in number. They were signed in the middle part of May of 1990. Findings of fact and conclusions of law were made, signed and filed in response to a request from Appellant. From the entirety of the record before us we conclude that each of the findings of fact is supported by sufficient and ample evidence of probative force and value. We determine that each of the conclusions of law is correct and proper.

A recovery of an attorney's fees may be awarded against a person, an individual or a corporation in addition to the amount of the claim and costs if the litigation is based on an oral or written contract. TEX.CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). The suit was based on a rather lengthy contract in writing. The attorney's fees were pleaded for in the original petition. Lacy had agreed to pay reasonable, contractual attorney's fees. Under the remedies in Exhibit A which were before the court, Lacy promised this:

> You [the bank] may, without notice ... make all unpaid principal, earned interest and all other agreed charges immediately payable.
> You [the bank] may use any remedy given you under any agreement securing this note.

Lacy agreed to pay any reasonable and/or contractual amount that the bank incurred in collecting this note as and for attorney's fees if assessed by a court. The attorney's fees involved were assessed by the court and Lacy had been served with a pleading that a reasonable attorney's fee for attorney services rendered and to be rendered would be in the amount of $5,000, although the judgment itself permits only $675. *See and compare Paramount Pipe & Supply Co., Inc. v. Muhr,* 749 S.W.2d 491 (Tex.1988); *Commercial Union Ins. Co. v. La Villa Sch. D.,* 779 S.W.2d 102 (Tex.App.—Corpus Christi 1989, no writ).

█ The trial judge may properly take into consideration the file which is before him in his court as well as the proceedings that are conducted in his presence. *See and compare Carrington v. Hart,* 703 S.W.2d 814 (Tex.App.—Austin 1986, no writ). *See also Lewis v. Deaf Smith Elec. Co–Op., Inc.,* 768 S.W.2d 511 (Tex.App.— Amarillo 1989, no writ). And the trial court under these circumstances is presumed to have taken judicial notice. The bank was represented by two attorneys in this case. TEX.CIV.PRAC. & REM.CODE ANN. § 38.002 (Vernon 1986). There exists a presumption that the usual and customary attorney's fees for any type of claim that is set out in section 38.001 are reasonable. Section 38.003. Section 38.004 provides that the trial court may take judicial notice of the usual and customary attorney's fees and of the contents of the case file without receiving further evidence in a bench trial. The trial court may observe the efforts and work of the lawyers in front of it.

The entire chapter on attorney's fees shall be liberally construed to promote its underlying purposes. TEX.CIV.PRAC. & REM. CODE ANN. § 38.005. Strong authority exists that it is within a court's discretion to award attorney's fees in the event of an appeal being taken even though there was no evidence offered on that matter. There is a viable, vital presumption that the trial court did take judicial notice of the full file in front of it and the trial before it as well as the usual and customary attorney's fees in awarding attorney's fees. *See Bloom v. Bloom,* 767 S.W.2d 463 (Tex.App.—San Antonio 1989, writ denied, mand. overr.).

█ Of course, the trial court may take judicial notice and is presumed to have taken judicial notice whether requested to do so by a party or not. Judicial notice, of course, may be taken at any stage of the proceedings. A reasonable construction of TEX.R.CIV.EVID. 201(c) would be, we perceive, that since the court may take judicial notice whether requested or not that the litigants would be aware of same. From the manner in which this case was tried, it certainly appears, the parties were aware that the trial court would take judicial notice. The necessity of taking judicial notice, we respectfully say, was brought about by or caused by Appellant.

Touching upon the reasonableness and necessity of an attorney's fees in this matter, it appears from the transcript that at the very least an attorney of record with an appropriate and proper bar number drew and filed a plaintiff's original petition with very important attachments with which he obviously acquainted himself. We glean this conclusion from the allegations of Appellee's pleadings. This defendant's original answer is not verified. We perceive that TEX.R.CIV.P. 93 was not followed. Additionally, important and cogent plaintiff's requests for admissions and interrogatories were drawn up and filed in behalf of the plaintiff bank by an attorney of record for the bank. It is correct that a defendant's first amended answer was filed which was verified but complained that the bank failed to give notice of the intended disposition of the collateral which was the subject of the suit. And further, the disposition of the collateral was not commercially reasonable.

We do not find any answers of defendant Lacy to the request for admissions and interrogatories in the transcript which was applied for by the attorney of record for Appellant Lacy. A trial was held on the merits of the litigation on or about March 15, 1990. As we perceive the statement of facts, the objection to the attorney's fees made at trial was that there was a failure to identify any experts as related to the question of attorney's fees. The bank's trial attorney requested the trial judge to take judicial notice of what was reasonable on this issue. The bank's second attorney testified as a fact witness. As we read the record we do not see that there was any objection made at trial to the trial court's taking judicial notice. There was no cross-examination of the bank's trial attorney on the attorney's fees issue.

We perceive that the court was asked to take judicial notice of the reasonableness and necessity on the issue of attorney's fees. But the note and its attachments clearly provide, we think, that in case of any default the bank could without notice make all unpaid principal, earned interest and any and all other agreed charges immediately payable. And further, the bank could use any remedy given to it under any agreement securing the note and Lacy agreed to pay reasonable amounts that the bank incurred in the collection of this note as attorney's fees.

In view of the entirety of the record before us, at least to the writer, it seems arbitrary and unreasonable to disallow the attorney's fees; and that there is no evidence on which to base the award of the attorney's fees.

As a separate and distinct basis for our affirmance is that after reviewing the entire record before us, as we must do, we conclude that any irregularities (we decide there were none) that took place at trial did not amount to such a denial of the rights of the Appellant as were reasonably calculated to cause and probably did cause the rendition of an improper judgment in the litigation. TEX.R.APP.P. 81(b)(1). In candor, under this record, we opine that the bank's attorney's fees were modest.

We overrule Appellant's points of error number four and five attacking the granting of attorney's fees. We overrule also Appellant's points of error number six and seven attacking and challenging the granting of prejudgment interest on the promissory note. We conclude the judgment entered below was correct; The said judgment is hereby affirmed.

The concurring opinion insisted upon publication.

The writer of this opinion realistically pronounces that, in effect, we are making a favorable ruling to and for Appellant Lacy by overruling his point of error concerning the attorney's fees for the bank. It certainly appears that if the bank's attorney's fees question is relitigated, then the able attorneys, having the benefit of these opinions, would then, in all probability, petition for an additional trial fee plus either one or two fees for appellate work. Of course, the attorney's fees for appellate work vary; but the variance usually runs between $1,500 to $2,500 or in some cases considerably higher. Logically then, the Appellant Lacy would be possibly, if not probably, subjected to additional attorney's fees for

the bank's attorneys in a very substantial amount. But we do not rule on Appellant's point of error on this basis. Nevertheless, it is a very practical and favorable consideration for Appellant.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the majority's holding regarding the attorney's fees because appellant only attacked the awarding of the attorney's fees by a no evidence point. Our supreme court in *Gill Sav. Ass'n. v. Chair King, Inc.*, 797 S.W.2d 31, 32 (Tex.1990) stated: "The trial court's own proceedings together with the fact that it *may* take judicial notice of usual and customary fees constitute *some* evidence to support the award of appellate attorney's fees." (emphasis mine). Since appellant did not raise factual insufficiency, we cannot consider that issue. Therefore, I must concur in the affirmance.

I would, however, offer this additional analysis. While TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986) *permits* a trial court to take judicial notice of the usual and customary attorney's fees and the contents of a case file, one should then turn to TEX.R.CIV.EVID. 201 to determine the correct procedure. (emphasis mine)

Rule 201(c) allows a court to take judicial notice, whether requested or not. Rule 201(d) requires a court to take judicial notice if requested by a party and supplied with the necessary information. Rule 201(e) provides a party with the opportunity to be heard as to the propriety of taking judicial notice and, "In the absence of prior notification, the request may be made after judicial notice has been taken." While the rule is not explicit, implicit in subsection (e) is some type of notice to the parties that the court will or has taken judicial notice. Basic fairness would seem to dictate such an action. *See* 1 R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL §§ 152–211 (Texas Practice 3d ed. 1980) and Wellborn, *Judicial Notice Under Article II of the Texas Rules of Evidence*, 19 ST. MARY'S L.J. 1 (1987). The Texas Supreme Court should reexamine Rule 201 in this context.