Witt v. Slussler 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-93-00159-CV







C & W Nightclubs, Inc., Successor in Interest to 


Diamonds Nightclub, Inc., and Dennis L. Witt, Appellants



v.



Mary Slussler, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 482,349, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING








 Appellee Mary Slussler (1) sued appellants Dennis Witt and C & W Nightclubs, Inc.
("Nightclubs") for breach of contract and three separate fraud claims stemming from the sale of
a bar. The jury returned a verdict in favor of Slussler on each cause of action, answering separate
damage questions for each claim. The trial court rendered judgment for $48,808.16 actual
damages, $200,000 exemplary damages, and attorney's fees. In eleven points of error, appellants
challenge this judgment. We will affirm.



FACTUAL AND PROCEDURAL BACKGROUND


 In the summer of 1989, Mary Slussler began negotiations with Dennis Witt for the
sale of her bar, The Stumble Inn. These negotiations culminated in an August 29, 1989 sales
agreement in which Slussler contracted to sell her bar to Witt and Diamonds Nightclub, Inc. for
$62,500. The original sales agreement required a down payment of $4,500 with an additional
payment of $35,000 at closing, the balance to be paid in monthly installments. Because Witt did
not have a liquor license, the contract specifically required him to "make prompt application" to
obtain one. Further, the contract provided that if Witt had not obtained a liquor license within
sixty days, the agreement would become void. Witt signed this agreement as president of
Diamonds Nightclub, Inc. (2) and included a personal guarantee. 

 By December 14, 1989, Witt had failed to apply for a liquor license and was unable
to raise the $35,000 necessary for closing. Slussler and Witt then entered into an amended sales
agreement requiring an immediate payment of $10,000 and additional monthly payments to make
up the balance. Because of Witt's failure to apply for a liquor license as required by the original
contract, the amended agreement required him to apply within ten days. If Witt was unable to
obtain a license, the amended agreement would terminate and Slussler would return the $10,000;
the original down payment would be retained as liquidated damages. Witt deleted his personal
guarantee from this amended agreement.

 Witt eventually applied for a liquor license on January 19, 1990; however, by April
1990 he had not been granted one. This delay was due in part to an official protest to Witt's
application filed by Texas Alcoholic Beverage Commission ("TABC") agent Mickey Whitley. 
Whitley's protest was based primarily on Witt's false or incorrect answers to questions regarding
his criminal arrests and investigations. Witt's application was ultimately withdrawn in July 1990.

 In late March 1990, Slussler became concerned over Witt's failure to obtain a
license. After contacting the TABC, Slussler discovered that the agency was protesting Witt's
application for failure to accurately disclose his criminal history. In addition, the TABC informed
Slussler that it was also investigating her for involvement in a subterfuge arrangement for allowing
Witt to operate the club under her license. Slussler contacted Witt and confirmed that he had not
received a liquor license.

 Concerned over the subterfuge allegation, Slussler obtained a temporary restraining
order on April 6, 1990 returning possession of the bar to her. Slussler and Witt signed an agreed
temporary injunction on April 25, 1990 in which Slussler retained possession. However, on
September 6, 1990, Witt successfully moved to set aside the April 25 injunction due to a defect. 
A second agreed temporary injunction was rendered on October 10, 1990, in which both parties
agreed to stay out of the club, subject to proceedings in justice of the peace court to determine
who had the immediate right of possession. In an uncontested proceeding, the justice of the peace
court awarded possession to Witt.

 After regaining possession of the bar, Witt submitted a second application for a
liquor license. On this application Witt included all of the arrests that were the subject of agent
Whitley's protest to the initial application. In February 1991 Witt obtained a liquor license and
began operating the club. Witt did not, however, make any further payments to Slussler. This
litigation ensued.

 Slussler sued Witt and Nightclubs for breach of contract and fraud. The fraud
claim stemmed from three separate allegations: (1) misrepresentation of Witt's criminal history,
(2) lack of intention to perform the amended agreement when it was signed, and (3)
misrepresentation of Witt's true purpose in amending the agreement--to delete his personal
guarantee. Along with the breach of contract claim, each of these fraud claims was submitted to
the jury. The jury returned a verdict for Slussler on all four of the claims. 

 Specifically, in its answers to questions one through three, the jury found that Witt
and Nightclubs had breached the contract and that Slussler had sustained actual damages of
$48,808.16. In answers to questions four through seven, the jury found that: Witt misrepresented
his criminal history to Slussler; Slussler sustained actual damages of $50,000; Witt's
misrepresentations were "intentional, willful and in wanton disregard" of Slussler's rights; and
$200,000 exemplary damages should be awarded. In addition to this misrepresentation, the jury
also found in answer to questions twelve through sixteen that: Nightclubs, acting through Witt,
lacked the intention of performing the amended agreement when Witt signed it; Slussler sustained
actual damages of $60,000; and $200,000 exemplary damages should be awarded for wilful and
wanton conduct. Additionally, the jury found that Witt had misrepresented his purpose in
amending the sales agreement and assessed damages of $10,000. Following another finding of
wilful and wanton conduct, the jury awarded $30,000 exemplary damages. Finally, in answer to
a series of questions relating to attorney's fees, the jury found that: (1) Slussler had orally
presented the contract claim to Witt or his attorney; (2) Witt failed to tender payment of the claim
within thirty days; and (3) Slussler's reasonable attorney's fees were $84,500.

 Since the jury returned a favorable verdict on all of Slussler's claims, she submitted
three alternative judgments to the trial court. (3) Rather than selecting one of these proposed
judgments, the trial court created its own. The judgment ultimately signed by the trial court
recited that the jury verdict was for Slussler on all causes of action and that judgment should be
rendered on the verdict. As to damages, the judgment provided that Slussler recover from Witt
and Nightclubs, jointly and severally, $48,808.16 in actual damages, $200,000 exemplary
damages, and attorney's fees of $84,500. Witt and Nightclubs appeal from this judgment.



DISCUSSION


 At the outset, Witt contends that the trial court rendered judgment on the specific
fraud theory that he lacked the intention to perform the amended agreement when it was signed. 
Consequently, the bulk of Witt's points of error address the legal and factual sufficiency of the
findings related to that theory. However, the trial court's judgment does not specify the claim on
which it is based. It is a well-established principle that when findings are sufficient to support the
trial court judgment under any one of several applicable legal theories and there is no reversible
error otherwise presented, the judgment must be affirmed. Hidalgo County v. Pate, 443 S.W.2d
80, 83 (Tex. Civ. App.Corpus Christi 1969, writ ref'd n.r.e.); accord Sacks v. Dallas Gold &
Silver Exch., Inc., 720 S.W.2d 177, 180 (Tex. App.Dallas 1986, no writ). In this case, there
are jury answers to liability and damage questions for two separate fraud claims, either of which
could support the judgment: lack of intention to perform the agreement when signed or
misrepresentation of criminal history.



A.  Misrepresentation of Criminal History

 Although Witt does not focus primarily on the misrepresentation-of-criminal-history
issue, he does challenge the legal and factual sufficiency of those findings in portions of points
of error nine through eleven. The standards of review for both no-evidence and insufficient-evidence points are well established. In deciding a no-evidence point, we must consider only the
evidence and inferences tending to support the finding of the trier of fact and disregard all
evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593
(Tex. 1986), cert. denied, 111 S. Ct. 135 (1990). When reviewing a jury verdict to determine
the factual sufficiency of the evidence, we must consider and weigh all the evidence and should
set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 Both Slussler and Witt testified that they discussed Witt's criminal history before
entering into the original sales agreement. Slussler testified: "I asked him had he ever been
convicted of any, you know, felonies, anything. And I said is there anything in your background
that would come up on like a police search." (Emphasis added.) According to Slussler, Witt's
response was "No problem. Everything was no problem." Slussler testified that Witt mentioned
one DWI and nothing else.

 Admitted in evidence were Witt's initial TABC license application, TABC agent
Whitley's protest to the application and accompanying affidavit, and Witt's second application. 
These documents indicate substantially more than one DWI. (4) Question 14 on the TABC
application asks for details if the applicant has "ever been arrested or picked up for investigation
for any reason." On his first application, Witt listed the following:



1974 - assault - pd fine

1979? - attempted sale of unregistered security-forfeiture & probation
(misdemeanor)

1972? - public intoxication - pd fine

1988 - DWI dismissed

1990 - DWI pending.



The results of Whitley's investigation, as recorded in his official protest to Witt's application and
his accompanying affidavit, reflect an even more extensive record. In 1973, Witt was arrested
and charged with public intoxication and disturbing the peace in Phoenix, Arizona. In 1974, the
Scottsdale, Arizona Police Department arrested and charged Witt for DWI, littering, and resisting
arrest. In 1979 Witt was arrested by the Maricopa County Sheriff's Department and charged with
unsafe lane usage and bribery of a public servant. Again in 1979 he was arrested and charged
with aggravated assault and harassing phone calls, this time by the City of Kingman, Arizona
Police Department. Also in 1979 Witt was the subject of a seventeen-count felony indictment for:
conspiracy, attempt to receive earnings of prostitutes, illegally conducting an enterprise, attempted
fraudulent scheme and artifice, and various fraud in the sale of and offers to sell unregistered
securities. Witt pleaded no contest and was found guilty of two felony counts of attempted sale
of unregistered securities. After completing three years probation and community service, these
two felonies were reduced to misdemeanors. Witt's second TABC application, filed in December
1990, confirmed all of these offenses and noted that two additional DWI charges in 1988 and 1990
were dismissed.

 Slussler testified that had she known of Witt's substantial criminal history it would
have had a bearing on her desire to go through with the sale of the bar because "with that kind
of criminal history, it would be difficult to impossible to obtain a TABC license." Both Slussler
and Whitley testified that the normal license application process takes only sixty days, the time
frame reflected in the original contract. Further, there was testimony that Witt's failure to
disclose his criminal history contributed to Whitley's protest and the significant delay in Witt
ultimately obtaining a license.

 Witt also testified about the discussion of his criminal history, but claimed Slussler
was "mistaken" about the extent of his disclosures. Witt testified that he told Slussler he had been
"charged with assault years ago and charged with something else years ago and had a security
violation that was a misdemeanor." When specifically asked about felonies, Witt responded: "No,
they were not felonies, that I have never been convicted of a felony." (Emphasis added.) Witt
also denied that he told Slussler about a DWI conviction. He also testified that he ultimately
received a liquor license in February 1991.

 Considering only the evidence and inferences tending to support the jury findings,
we conclude there is legally sufficient evidence that Witt misrepresented his criminal history in
a wilful and wanton fashion. The record contains evidence that in response to a direct question
to disclose what offenses would come up on a police report, Witt affirmatively misrepresented that
there was "no problem" except for one DWI. Based on Witt's own TABC applications, that
representation was false. Additionally, Witt denied that he had any felony convictions, when in
fact he had pleaded no contest to two felony security violations, even though they were later
reduced to misdemeanors after completing probation. These statements, in the context of a
discussion about one's criminal history, provide legally sufficient evidence to support the jury's
finding of misrepresentation. 

 Likewise, considering all the evidence, there is factually sufficient evidence to
support the relevant jury findings. Although Witt claims he disclosed more of his arrest record
to Slussler, the jury was entitled to weigh and determine the credibility of this testimony. A
comparison of Witt's own liquor license applications indicates that he failed to disclose the full
extent of his criminal history to the TABC until it was discovered through a TABC investigation
and protest. The undisputed fact that Witt made no attempt to apply for a liquor license as
required by the original contract, as well as his delay following the amended contract are also
probative. While Witt eventually received a liquor license, it was sixteen months after originally
contemplated by the first agreement. Slussler testified that she agreed to sell the bar for less than
it was worth in order to complete the deal quickly. She also testified that Witt's criminal history
was a concern because of potential delays in licensing. In all, we cannot say that the jury findings
were so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. 

 There is also legally and factually sufficient evidence to support the actual and
punitive damage awards assessed for Witt's misrepresentation of his criminal history. The
evidence reflected that: Witt owed approximately $37,000 on the contract; Slussler spent $11,000
for delinquent bills and TABC taxes when she temporarily regained possession of the bar in April
1990; the bar had a value of between $75,000 and $150,000; when Slussler operated the bar she
netted an annual income of $48,000 to $60,000; and as a result of Witt's conduct, Slussler was
dispossessed of the nightclub resulting in a total loss of income between $64,000 and $80,000. 
We conclude the evidence is both factually and legally sufficient to support the jury's findings of
$50,000 in actual damages and $200,000 in punitive damages as a result of Witt's
misrepresentation of his criminal history.

 We overrule the portions of points of error nine, ten, and eleven relating to the
jury's findings on misrepresentation of criminal history. Because of our resolution of this issue,
the trial-court judgment is sustainable on this legal theory alone. Consequently, with some minor
exceptions, it is unnecessary for us to address the bulk of Witt's additional points of error that
relate to Slussler's other claims. (5)


B.  Illegal Contract

 In point of error three, Witt claims the trial court erred in rendering judgment for
fraud because the contract between the parties was void as a matter of law. The essence of this
argument is that the contract was illegal because it required Witt to operate the bar using
Slussler's liquor license in violation of the Alcoholic Beverage Code. See Tex. Alco. Bev. Code
Ann. § 109.53 (West 1995). According to Witt, because the fraud claims arise out of the alleged
illegal contract, they are barred. We conclude, however, that Witt's premise that the contract is
illegal and void as a matter of law is incorrect. 

 It is well settled that a contract that can be performed in a legal manner is not void
merely because it may have been performed in an illegal manner. Lewis v. Davis, 199 S.W.2d
146, 149 (Tex. 1947). In Hosack v. Cassidy, 543 S.W.2d 202 (Tex. Civ. App.Corpus Christi
1976, no writ), this rule of law was specifically applied to the sale of a bar to one without a liquor
license. The plaintiffs in Hosack recovered damages for breach of contract in the sale of a bar. 
The defendant appealed the judgment on the ground that the contract was illegal as a matter of law
because he operated the bar using the plaintiffs' liquor license. Id. at 206. The evidence reflected
that while the liquor license for the club was in the names of the plaintiffs only, they specifically
discussed with the defendant that he would acquire his own license. Id. at 206-07. On these
facts, the court concluded that what was sold was the assets of the business, since no attempt was
made to transfer the license as a part of the sale. Id. at 207. The court held the contract valid and
not illegal: "The fact that the defendant may have operated the business after he purchased it under
the liquor license that was then outstanding in the names of the plaintiffs did not render the
contract, legal when made, illegal because of the defendant's actions." Id. 

 The present case comes squarely within the holding of Hosack. Slussler sold Witt
the assets of her business. There was no attempt to transfer her license to Witt as part of the sale. 
Slussler not only discussed with Witt that he must obtain a liquor license, but both the original
and amended sales agreements expressly required that he obtain one or the sales contracts would
be void. The fact that Witt may have operated the bar in an illegal manner due to his own
decision not to apply for a liquor license does not render the contract itself illegal as a matter of
law. Point of error three is overruled.



C.  Attorney's Fees (6)

 In order to recover attorney's fees, Slussler must prove: representation by an
attorney, presentment of her claim to Witt, and nonpayment within thirty days after presentment. 
See Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (West 1986). No particular form of
presentment is required. Carrington v. Hart, 703 S.W.2d 814, 818 (Tex. App.Austin 1986, no
writ). An oral request for performance is sufficient to meet the presentment requirement. Criton
Corp. v. Highlands Ins. Co., 809 S.W.2d 355, 358 (Tex. App.Houston [14th Dist.] 1991, writ
denied). The jury specifically found that Slussler, through her attorney, orally presented her
contract claim to Witt or his attorneys. Witt challenges the legal and factual sufficiency of the
evidence for the jury's finding. 

 Slussler's attorney testified that she orally presented the claim to Witt's attorney. 
Neither Witt nor his attorney presented any evidence that the claim was not presented. (7) It is
undisputed that Witt made no payments of any kind to Slussler after April 1990. We conclude
that the record contains both legally and factually sufficient evidence to support the jury's finding
of presentment. Point of error four is overruled.



CONCLUSION


 We hold that the relevant evidence and findings are sufficient to support the trial-court judgment based on the legal theory of misrepresentation of Witt's criminal history; no
reversible error is otherwise presented. The judgment is affirmed.



 J. Woodfin Jones, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: May 31, 1995

Do Not Publish
1.   Mary Slussler is now known as Mary Williams.
2.   The original sales agreement was signed by Witt as president of "Diamonds, Inc." 
This corporation did not exist at the time of the agreement. Subsequently, "Diamonds
Nightclub, Inc." was incorporated in September 1989. This corporation was owned
principally by Witt and his immediate family. Diamonds Nightclub, Inc. was later
merged into C & W Nightclubs, Inc., also owned principally by Witt and his family.
3.   Slussler's proposed judgments were: (1) Judgment A, based on fraud due to lack of
intent to perform the contract when signed, awarded her $60,000 actual damages and $200,000
exemplary damages; (2) Judgment B, based on fraud in misrepresentation of criminal history,
awarded her $50,000 actual damages and $200,000 exemplary damages; and (3) Judgment C,
based on breach of contract, awarded her $48,808.16 actual damages and $84,500 attorney's
fees, plus $10,000 actual damages and $30,000 punitive damages against Witt individually for
misrepresenting his purpose in amending the contract.
4. In points of error five and six, Witt claims that the trial court abused its discretion
in admitting non-probative evidence of Witt's character and TABC license applications. 
These points are meritless. Since the essence of Slussler's claim is that Witt
misrepresented his criminal history, evidence of his true criminal history is not only
probative, but essential. It does not run afoul of the rules of evidence, because the
evidence was not offered to impeach Witt's credibility, but to prove the essential elements
of his fraud. See Tex. R. Civ. Evid. 608, 609. Witt also contends the court erroneously
admitted his TABC applications because "the issue was moot" since he obtained a license. 
However, the fact that Witt ultimately secured a liquor license is irrelevant to the
misrepresentations he made to Slussler eighteen months earlier. The TABC applications are
probative in that they reflect both Witt's failure to be forthcoming in his criminal history and
what the ultimate extent of that history was. Points of error five and six are overruled.
5.   Specifically, we do not address points of error one, two, and seven, which relate to
the sufficiency of the evidence to support the jury's finding on the fraud claim of lack of
intention to perform the contract when signed. It is also unnecessary to address the
portion of point of error nine relating to sufficiency of the evidence of Witt's
misrepresentation of his purpose in amending the agreement to delete his personal
guarantee. Likewise, we do not consider the portions of points ten and eleven relating to
the findings of actual and punitive damages on these other two fraud claims. Finally, we
do not address point of error eight relating to sufficiency of evidence to support findings
regarding Slussler's anticipatory repudiation of the contract.
6.   Attorney's fees are recoverable in a fraud case when: (1) there is a recovery in tort,
(2) there is a claim and finding of breach of contract, and (3) the tort arose out of that
breach. See Gill Sav. Ass'n v. Chair King, Inc., 797 S.W.2d 31, 31 (Tex. 1990); Artripe v.
Hughes, 857 S.W.2d 82, 87 (Tex. App.Corpus Christi 1993, writ denied); Schindler v.
Austwell Farmers Coop., 829 S.W.2d 283, 288 (Tex. App.Corpus Christi), aff'd as
modified, 841 S.W.2d 853 (Tex. 1992). These elements are present in this case.
7.   Witt did raise a hearsay challenge to his attorney's out-of-court response to the oral
presentment. This is irrelevant since it is undisputed that tender was never made.