CITY OF HOUSTON and Houston Independent School District, Appellants and Cross–Appellees,

v.

FIRST CITY, Texas, Appellee and Cross–Appellant,

v.

HEARD, GOGGAN, BLAIR & WILLIAMS, Cross–Appellee.

No. 01–90–00622–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 12, 1992.

Rehearing Denied April 23, 1992.

---

William E. King, Joyce A. Langenegger, Houston, for appellant.

Vinson & Elkins, Glen A. Rosenbaum, Barbara A. Radnofsky, Sarah A. Duckers, Houston, for appellee.

Before BISSETT, COHEN and O'CONNOR, JJ.

## OPINION

BISSETT, Justice.[1]

This is an appeal from a delinquent property tax collection suit. The City of Houston ("City") and Houston Independent School District ("HISD") filed suit in October 1987, against Russo Properties, Inc., the then record owner of Block 41, S.S.B.B., City of Houston, Harris County, Texas, known generally as the Lyric Centre Office Building (the "Property"), to recover delinquent taxes for the tax years 1985, 1986, and 1987, interest and penalties due thereon, and attorney's fees. First City National Bank of Houston (hereafter generally referred to as "First City Bank," but sometimes referred to as "New First City Bank"), which held a lien against the Property, was joined as a defendant, and later filed a counterclaim against the City, HISD, and the law firm of Heard, Goggan, Blair & Williams ("Heard, Goggan"), the attorneys and collecting agent for the City and HISD.

Following a trial to the court, judgment was rendered in part for the City and HISD, and in part for First City Bank. All parties have appealed. We affirm.

The issues to be decided are: (1) whether the TEX.TAX CODE ANN. § 33.07 (Vernon 1982) penalty was properly assessed against the Property; (2) whether the assessment of such penalty was barred by the Financial Institutions Reform, Recovery and Enforcement Act of 1989; (3) whether there was an accord and satisfaction when the City and HISD deposited checks for taxes on the Property and, if so, was there a breach of the accord and satisfaction; and (4) whether the parties are entitled to attorney's fees.

## BACKGROUND

First City Bank was formerly a wholly-owned subsidiary of First City Bankcorporation of Texas, Inc., a Texas corporation ("Old First City Bank"). Effective April 19, 1988, Old First City Bank was reorganized with the financial assistance of the Federal Deposit Insurance Corporation ("FDIC"), and a new, reorganized entity was created, called First City Bankcorporation of Texas, Inc., a Delaware corporation ("New First City Bank"). By virtue of the reorganization, First City Bank, appellee and cross-appellant in this appeal, is now a wholly-owned subsidiary of New First City

1. The Honorable Gerald T. Bissett, retired Justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi, sitting by assignment.

Bank. The reorganization resulted in the creation of another new entity, Collecting Bank, a national bank in liquidation, which assumed $1.753 billion book value of non-performing and other lesser quality assets of Old First City Bank's subsidiary banks (before related reserves of approximately $735 million). Collecting Bank also agreed to indemnify New First City Bank for any liabilities of its subsidiaries arising out of their pre-reorganization activities. Collecting Bank does not accept deposits or engage in general banking activities.

New First City Bank, acting on Collecting Bank's behalf, conducts asset management and collection activities with respect to assets on the books of Collecting Bank, including the Property. Collecting Bank's purpose, as set forth in its Articles of Association, is to carry on the business of a bank in liquidation and to serve as liquidating agent.

The purpose of the FDIC assistance transaction was to reorganize Old First City Bank by (1) forming a new bank holding company, New First City Bank, (2) removing troubled loans from its books, and (3) providing financial assistance to New First City Bank. Pursuant to the assistance transaction, an outside investor group made a significant infusion of private capital into New First City Bank with the approval of the FDIC.

The FDIC contributed $970 million in FDIC notes to the reorganization, and in return, received $970 million in Series A preferred stock from Collecting Bank, which is subordinated to Collecting Bank's indemnity obligations to New First City Bank. The Series A preferred stock owned by the FDIC is senior to the other stock of Collecting Bank. Although there are owners of other classes of Collecting Bank stock, for liquidation purposes, these other owners only receive distributions after the FDIC has been repaid 100 percent of the $970 million of Series A preferred stock.

On April 19, 1988, as part of the FDIC-assisted reorganization, First City Bank transferred its note and lien interest with respect to the Property to Collecting Bank.

2. Filed on January 19, 1990.

In May 1988, First City Bank, acting on behalf of Collecting Bank, foreclosed its lien on the Property.

## PLEADINGS

The City and HISD alleged in their first amended original petition,[2] their trial petition: (1) that delinquent taxes in certain stated amounts were due and owing against the Property for the tax years 1985, 1986, and 1987; (2) that on or about April 28, 1988, First City Bank remitted to the tax offices of the City and HISD checks in the amounts of $607,750.58 and $779,830.15 respectively, "toward the payment of all outstanding taxes, interests and penalties" on the Property; (3) that the amounts due "include penalties that have accrued, as a matter of law, in the amount of fifteen percent (15%) of all tax, penalty and interest unpaid on July 1 in each year under § 33.07 for 1985 and 1986 taxes;" (4) that the "penalties are not an attorney's fee, are not subject to a reasonableness standard under the provisions of Texas law, and as a statutory penalty [sic] previously accrued may not be waived, released, or remitted without statutory authority;" (5) that the application of the funds represented by the checks "resulted in the payment of all taxes, penalties and interest for all accounts for taxes assessed for 1985 and 1986;" (6) that the amount was insufficient to pay the total taxes for 1987; therefore, "the plaintiffs applied the remaining amount prorata to all accounts," thereby resulting in a total deficiency due the City of $64,670.09 and due HISD of $80,240.73, as of December 31, 1989; (7) that the City and HISD are entitled to reasonable attorney's fees "for the prosecution of this action for the tax year 1987, and these attorney's fees should be taxed as costs;" and (8) that the 1987 taxes due prior to any payment by First City Bank was $490,485.60, and "reasonable attorney's fees are 15% of this amount, or $73,572.75."

First City Bank, in its second amended original answer, in addition to pleading a general denial, pleaded as affirmative de-

fenses: (1) that in the letters transmitting the checks to the City and HISD, counsel for First City Bank specifically set forth that the payments were to be applied only to tax, interest, and penalties pursuant to TEX.TAX CODE ANN. § 33.01 (Vernon 1982), and were not to be applied to any penalties, costs, or fees pursuant to TEX.TAX CODE ANN. §§ 33.07 or 33.48 (Vernon 1982), and that the tax offices of the City and HISD misapplied the funds by applying them to all taxes, penalties, and interest under sections 33.07 and 33.48; (2) that this misapplication of the funds represented by the checks resulted in some of the taxes being left delinquent, which constituted a breach of contract; (3) that by depositing the checks, the City and HISD accepted the conditions under which they were tendered, and the acceptance thereof constituted "an accord and satisfaction;" (4) that by virtue of the accord and satisfaction, "all taxes, penalties and interest due prior to 1988 on the accounts at issue, excluding penalties under sections 33.07 and 33.48, are paid in full and are no longer at issue in this case;" (5) that the breach of the accord and satisfaction by the City and HISD that resulted when they refused to properly apply the conditional tender of funds has caused First City Bank to incur attorney's fees and expenses in excess of $20,000.00; and (6) that the asserted penalties for the tax years 1985, 1986, and 1987 are preempted by federal banking laws. First City prayed that the City and HISD be required to reapply the proceeds of the checks pursuant to the accord and satisfaction, and for a recovery of attorney's fees of not less than $20,000.00.

First City Bank also filed a counterclaim against the City, HISD, and the law firm of Heard, Goggan. It alleged therein virtually the same facts as those set out in its second amended original answer and summarized above. The relief prayed for is substantially the same as that requested in the second amended original answer, except that it prayed for attorney's fees of not less than $5,000.00.

The City and HISD, in their answer to First City Bank's counterclaim, denied generally the allegations therein made, and

pleaded by way of affirmative defenses: (1) that First City Bank's claims involved governmental functions, "as to which the Texas legislature has expressly preserved absolute sovereign immunity, by virtue of TEX.CIV.PRAC. & REM.CODE ANN. § 101.055 (Vernon 1986);" (2) that the funds received by them were not conditionally tendered, and the communications accompanying the checks, as a matter of law, constituted only a statement of position or purpose, and "were not express conditions to the right of the recipient to negotiate the draft;" and (3) that there was not a meeting of the minds necessary to accomplish the contractual defense of accord and satisfaction.

## FACTS

The facts are undisputed except for those relating to claims for attorney's fees. After receiving authorization to proceed with foreclosure, on April 28, 1988, First City Bank, acting on behalf of Collecting Bank, remitted checks to the City and HISD tax offices in payment of all outstanding taxes, interest, and penalties pursuant to section 33.01(a) with respect to the Property for all years prior to 1988. The amount remitted to the City was $608,-422.58, and the amount remitted to HISD was $779,071.81.

In the letters transmitting the checks, counsel for First City Bank specifically set forth that the payments were to be applied only to tax, interest, and penalties pursuant to section 33.01(a) and were not to be applied to any penalties, costs, or fees pursuant to sections 33.07 and/or 33.48. In addition, attached to the checks to the City and HISD tax offices were stubs containing the following statement:

TAXES/RUSSO COLLATERAL

All taxes, penalties and interest prior to 1988 on Block 41 S.S.B.B. excluding penalties/costs/fees under Sec. 33.07 and 33.48.

The City and HISD stipulated that they understood the terms of the transmittal letters, together with the instruction on the checks, to be a condition under which endorsement of the checks was expected to

execute release of all taxes, penalty, and interest under section 33.01 for the tax years 1985, 1986, and 1987, and that First City Bank did not intend that either taxing unit apply any of the proceeds of the checks to penalties on attorney's fees pursuant to sections 33.07 and 33.48.

By letters dated May 4, 1988, Mr. Lloyd Waguespack, the tax office manager for the City and HISD, informed counsel for First City Bank that the checks tendered to the City and HISD had been applied in a different manner than described in First City Bank's letters. Specifically, both letters stated the checks were applied as follows:

> This amount was applied to all taxes, penalties and interest and penalties under 33.07 and 33.48 of the Tax Code. This resulted in three accounts being left delinquent.

In letters dated May 6, 1988, First City Bank responded to Waguespack's May 4, 1988, letters. In those letters, counsel for First City Bank stated that its April 28, 1988, remittances were not to be applied to penalties imposed pursuant to sections 33.07 and/or 33.48, and further informed him that First City Bank considered the City and HISD's application of the payments to be an unlawful conversion and breach of contract. First City Bank then formally demanded that the tax office for the City and HISD either (1) reapply the payments as previously instructed in the letters of April 28, 1988, so that no part thereof constituted payment of penalties imposed pursuant to sections 33.07 and 33.-48, or (2) refund the payments to it. The City and HISD refused to comply with either demand.

The total amount of delinquent taxes, interest, and penalties due as of April 28, 1988, for the tax years 1985, 1986, and 1987, were:

To the City $608,422.58 [3] To HISD $779,071.81 [3]

The penalties pursuant to section 33.07 were assessed as follows:

| Year | By the City | By HISD |
|------|-------------|---------|
| 1985 | $ 3,783.23 | $ 0.00 |
| 1986 | 48,798.77 | 65,975.72 |
| 1987 | 0.00 | 0.00 |
| | $52,582.00 | $65,975.72 |

Heard, Goggan had contracts with the City and HISD for the collection of delinquent taxes. These contracts provided, among other provisions, for a fee of 15 percent of all delinquent taxes, penalties, and interest collected to be paid.

### THE JUDGMENT

Upon the conclusion of the bench trial, judgment was signed on March 20, 1990. Findings of fact and conclusions of law were filed. The judgment, in relevant part, decreed:

> On April 28, 1988, Defendant First City made payments to Plaintiff City in the amount of $608,422,58 and to Plaintiff HISD in the amount of $779,071.81 with respect to the Property. By virtue of an accord and satisfaction, such remittances by Defendant First City constituted payment in full to Plaintiffs City and HISD of all base tax interest and penalties outstanding pursuant to Section 33.01 of the Texas Property Tax Code ("Code") with respect to the Property for the tax years 1985, 1986 and 1987. No part of such payments was applicable to or will be applied to penalties, costs, attorney's fees or otherwise pursuant to Sections 33.07 or 33.48 of the Code.

> Plaintiff City is awarded $4,400.00 in penalties, costs, attorney's fees and otherwise pursuant to Sections 33.07 and 33.48 of the Code, with interest beginning to accrue 30 days from the date of this Judgment.

> Plaintiff HISD is awarded $5,600.00 in penalties, costs, attorney's fees and otherwise pursuant to Sections 33.07 and 33.48 of the Code, with interest beginning to accrue 30 days from the date of this Judgment.

> The Tax Assessor–Collector of Plaintiff City and the Tax Assessor–Collector of Plaintiff HISD are ordered to correct their 1985, 1986 and 1987 tax rolls to: (i)

---

**3.** The exact amount remitted by First City Bank on April 28, 1988.

reallocate the tax payments made by Defendant First City on April 28, 1988 to constitute payment in full for all base tax and interest and penalties pursuant to Section 33.01 of the Code with respect to the Property for the tax years 1985, 1986 and 1987 in accordance with paragraph 2 above; (ii) show the total amount presently owing to Plaintiffs City and HISD with respect to the Property for the tax years 1985, 1986 and 1987 (including penalties, costs, attorney's fees and otherwise pursuant to Sections 33.07 and 33.48 of the Code) to be $4,400 for the City and $5,600 for HISD (with interest beginning to accrue on such amounts thirty days from the date of this Judgment).

Upon payment of the penalties, costs, attorney's fees otherwise awarded to Plaintiffs City and HISD pursuant to paragraphs 3 and 4, above (including any interest that may accrue beginning thirty days from the date of this Judgment), Plaintiffs City and HISD shall show all assessments of tax, penalties, interest, costs, collection fees, attorney's fees and otherwise against the Property for the tax years 1985, 1986 and 1987 to have been paid in full and shall release and remove the 1985, 1986 and 1987 ad valorem tax liens from the Property.

All court costs are assessed against the party that incurred them.

All relief not expressly granted by this Judgment is denied.

APPLICABLE TAX CODE SECTIONS

Code sections 33.01, 33.07 and 33.48, in relevant part, provide:

Section 33.01. Penalties and Interest

(a) A delinquent tax incurs a penalty of six percent of the amount of the tax for the first calendar month it is delinquent plus one percent for each additional month or portion of a month the tax remains unpaid prior to July 1 of the year in which it becomes delinquent. However, a tax delinquent on July 1 incurs a total penalty of twelve percent of the amount of the delinquent tax without regard to the number of months the tax has been delinquent.

(c) A delinquent tax accrues interest at a rate of one percent for each month or portion of a month the tax remains unpaid.

Section 33.07. Additional Penalty for Collection Costs.

(a) A taxing unit or appraisal district may provide, in the manner required by law for official action by the body, that taxes that remain delinquent on July 1 of the year in which they become delinquent incur an additional penalty to defray costs of collection, if the unit or district or another unit that collects taxes for the unit has contracted with an attorney pursuant to Section 6.30 of this Code. The amount of the penalty may not exceed 15 percent of the amount of taxes, penalty, and interest due.

. . . .

(c) If a penalty is imposed pursuant to this section, a taxing unit may not recover attorney's fees in a suit to collect delinquent taxes subject to the penalty.

(d) If a taxing unit or appraisal district provides for a penalty under this section, the collector shall deliver a notice of delinquency and of the penalty to the property owner at least 30 and not more than 60 days before July 1.

Section 33.48. Recovery of Costs and Expenses.

(a) In addition to other costs authorized by law, a taxing unit is entitled to recover the following costs and expenses in a suit to collect a delinquent tax:

. . . .

(4) reasonable attorney's fees approved by the court and not exceeding 15 percent of the total amount of taxes, penalties, and interest adjudged due the unit.

THE APPEAL OF THE CITY AND HISD

◼ The City and HISD present four points of error. They contend in their first point that the trial court erred in holding

that "it had authority to lower the penalty" assessed by them "pursuant to 33.07 of the Code." They further contend in their third point that the trial court erred in holding that the writing on the face of the checks tendered by First City Bank "constitutes a conditional endorsement and ordering that the accounts be reallocated." Since the points are intertwined, they will be considered and discussed together.

The trial court, among other findings of fact, found:

Plaintiffs, City of Houston and the Houston Independent School District, both through their Tax Assessor/Collectors and through their attorneys, understood the terms of the Rosenbaum letters of April 28, 1988, together with the instructions on the checks, to be a condition under which endorsement of the checks was expected to execute release of all taxes, penalty and interest under Section 33.01 of the Texas Property Tax Code (the "Code") for the tax years 1985, 1986 and 1987 with respect to the property that is the subject of this case, and that no amount of the proceeds of such checks were [sic] to be applied to penalties, costs, attorney's fees or otherwise under Sections 33.07 and/or 33.48 of the Code.

. . . .

Through its April 28, 1988 remittances, Defendant/Cross–Plaintiff First City did not intend to pay costs, fees, or penalties under Section 33.07 or Section 33.48 of the Code to the City of Houston or to the Houston Independent School District in this matter.

The trial court, among other conclusions of law, concluded:

Defendant/Cross–Plaintiff First City's payments of April 28, 1988 delivered to Plaintiff/Cross–Defendants City of Houston and the Houston Independent School District with the Rosenbaum letters were improperly allocated by Plaintiff/Cross–Defendants, in that endorsement and negotiation of the checks constituted an accord and satisfaction. The terms of the accord and satisfaction are

those terms set forth in said letters and checks.

To the extent that Defendant/Cross–Plaintiff First City's April 28, 1988 payments are allocated to penalties, costs or fees pursuant to Sections 33.07 or 33.48 of the Code, such payments are involuntary payments and therefore must be refunded or reallocated to constitute payment in full of all base tax, interest, and penalties pursuant to Section 33.01 of the Code.

The trial court did not "lower the penalty" assessed by the City and HISD. It simply enforced the conditions under which the checks were tendered and cashed. As stated in the judgment, such payments constituted "an accord and satisfaction," and, "no part of such payments was applicable to or will be applied to the penalties, costs, attorney's fees or otherwise pursuant to sections 33.07 or 33.48 of the Code."

The reliance by the City and HISD on *Jones v. Williams,* 121 Tex. 94, 45 S.W.2d 130 (1931), is misplaced. The holding of *Jones* does not consider, and is inapplicable to the type of penalty authorized by section 33.07. That section was *added* to the Code by the Act of August 14, 1981, 67th Leg., 1st C.S., ch. 13, sec. 130, 1981 Tex.Gen. Laws 117, 168, effective January 1, 1982. The stated purpose of section 33.07 penalty is to *defray the costs of collection.* At the time of the *Jones* decision, the analogous statutory provisions for recovery of collection costs was not denominated as a penalty.

The City and HISD argue that the doctrine of accord and satisfaction does not apply to tax collection cases because the doctrine is intended to prevent a party from acting as if a contract exists and then later denying its existence. In such instances, to protect a party who has relied on such conduct, the courts have implied a contract; however, such an implication does not exist in the tax collection context. They also argue that "if taxpayers are allowed to attempt to 'slip' conditioned endorsements through local governmental tax offices, the likely result is that devious taxpayers will be rewarded by avoiding

payment of their full tax liability." No authority is cited in support of such arguments. They further argue that there was no accord and satisfaction because there was "no mutual assent between the parties," and the legend on the checks and the attached cover letters do not say that the negotiation of the checks is conditioned on its allocation but is merely an instruction, which the City and HISD chose to ignore. Finally, the argument is made that the conditions under which payment was tendered are illegal in that they violate "City Ordinance Section 44–16."

It is well established in the law that all claims arising out of contracts, express or implied, may be the subject matter of an accord and satisfaction, provided such contracts are not illegal. *Tex. & R. Ry. v. Poe*, 131 Tex. 337, 115 S.W.2d 591, 592 (1938).

■ It is a fundamental principle of contract law that when a check is tendered to a party and that check lists certain conditions, and the conditions are accepted, a contract is formed when the party receiving the check cashes it or deposits it. Where such a tender is made in an effort to discharge or modify an existing and disputed obligation between the parties, the acceptance of such tender constitutes an "accord and satisfaction." *See City of Mesquite v. Rawlins*, 399 S.W.2d 162, 167 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.); *Burgamy v. Davis*, 313 S.W.2d 365, 368 (Tex.Civ.App.—Fort Worth 1958, no writ).

■ The elements of accord and satisfaction are well established under Texas common law. There must be a new contract, express or implied. *Industrial Life Ins. v. Finley*, 382 S.W.2d 100, 104 (Tex.1964). The evidence must establish the existence of mutual assent between the parties. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969). An accord is merely an agreement whereby one party agrees to give or perform and the other to accept something other than or different from what he is, or considers himself to be, entitled to. A satisfaction is the performance of such an agreement. *Slaughter v. Temple Lumber Co.*, 307 S.W.2d 108, 114 (Tex.Civ.App.—Houston 1957, writ ref'd n.r.e.).

The acceptance of the checks resulted in acceptance of the *conditions* associated with the checks; namely, to *apply* the payment in full satisfaction of all amounts due *except* the disputed penalties, costs, and/or fees under sections 33.07 and/or 33.48. Viewed in this context, accord and satisfaction must apply. The City and HISD accepted *and* cashed the checks containing terms that it is stipulated they understood. These terms explicitly withheld payment from a category of liability that was directly in dispute. The fact that the City and HISD sought to keep the monies and ignore the conditions under which payments were made does not eliminate the undisputed evidence that a contract governing application of the remittances was made.

A case similar to this appeal was presented in *Warrior Constructors v. Small Business Investment Co.*, 536 S.W.2d 382 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ), where a guarantor made payments on a note under the express condition that the funds be applied to reduce the guarantor's liability. The creditor accepted the payments under such conditions. The court held that the creditor was bound to apply the funds as instructed, and stated:

> [T]he cashing of appellant's checks by appellee was such an exercise of dominion over the funds as to constitute an acceptance of the conditions on which they were offered. . . .

*Id.* at 386.

In this case, the following facts are established: (1) that there was a dispute over the applicability and amount of sections 33.07 and 33.48 penalties, costs, and/or fees; (2) that First City Bank made tenders of checks containing clear conditions, both on the attached check stubs, and the accompanying transmittal letters, regarding the application of the payments among taxes, base penalty, and interest under section 33.01 and penalties, costs, and/or fees under sections 33.07 and/or 33.48; (3) that the tax offices of the City and HISD received the checks and transmittal letters; (4) that the City and HISD and their authorized

representatives understood the meaning of the statements on the checks and letters; and (5) the City and HISD deposited the checks and applied the proceeds of the checks in a manner different from the terms of the checks and letters.

Inherent in the finding by the trial court that the City and HISD understood that First City Bank's tender of the checks to be conditioned on the application of the proceeds to *only* taxes, penalties, and interest under section 33.01 is a finding that there was mutual assent to the demanded application. Accordingly, the trial court concluded, as a matter of law, that the application of the proceeds of the checks by the City and HISD in part to payment of costs and attorney's fees pursuant to the provisions of the sections 33.07 and 33.48 was a breach of contract and the acceptance of the checks constituted an accord and satisfaction.

■■■ Although there was no *express* language of contracting set forth on First City Bank's remittances, the facts and circumstances in their entirety inescapably lead to the conclusion that there was an implied contract. An implied contract arises when circumstances disclose that, according to the ordinary course of dealing and the common understanding of men, there was a mutual intent to contract. *Stephens v. Mills County*, 113 S.W.2d 944, 947 (Tex.Civ.App.—Austin 1938, no writ). Express language is not essential to a promise; conduct may equally convey an objective assent. *Texas & N.O. Ry. v. New*, 95 S.W.2d 170, 175 (Tex.Civ.App.—Austin 1936, writ dism'd w.o.j.). Here, the conduct of the parties reflects that assent. The only difference between express contracts and implied contracts is the character and manner of proof required to establish mutual assent, and whether mutual assent existed is a question of fact to be determined by the finder of facts, the trial judge in this case. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 610 (Tex.1972). In reviewing the record to determine whether the trial court's findings of fact are supported by the evidence, the evidence must be viewed in a light most favorable to First City Bank. *Morgan v. Morgan*, 657 S.W.2d 484, 492 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd w.o.j.). The evidence fully supports the above-noted findings of fact and conclusions of law of the trial court.

The first and third points of error are overruled.

The City and HISD contend in their second point of error that "the trial court erred in holding that the attorney's fees due pursuant to section 33.48 of the Texas Tax Code and the penalty due pursuant to section 33.07 of the Texas Tax Code constitute an unreasonable and unconscionable fee for legal services." They argue: (1) the customary fee to be collected as attorney's fees under a contract for collection of delinquent taxes is 15 percent of the base tax, penalty, and interest due and owing; (2) this amount can be collected on any delinquent taxes for which a section 33.07 penalty is not claimed; (3) if the conditions of section 33.07 penalty have not been satisfied for a particular tax year, the taxing unit is entitled to recover section 33.48 attorney's fees; (4) since a portion of the 1987 taxes were paid prior to July 1, 1988, to the extent that these payments were made for which a section 33.07 penalty is not sought, they are entitled to a separate determination of attorney's fees on these accounts for the tax year 1987; (5) they established through the testimony of their expert witness that attorney's fees equal to 15 percent of the delinquent taxes, penalty, and interest, is usual and customary and should be awarded them; (6) in determining what constitutes reasonable attorney's fees in any given matter, the courts have often looked to the standard of the usual and customary fee for a particular type of claim; (7) the only parties with standing to object to the reasonableness of attorney's fees were the City and HISD; and (8) First City Bank did not present any evidence to rebut the presumption that section 33.48 attorney's fees were unreasonable.

The City and HISD also contend that they, as a matter of law, are entitled to recover section 33.07 additional collection

costs, which they argue is 15 percent of all tax, penalty, and interest unpaid on July 1 in each year for the tax years 1985 and 1986,[4] which is a statutory penalty and does not include attorney's fees. They further contend that they, jointly, are also entitled to recover 15 percent of all delinquent taxes, penalty, and interest for the tax year 1987[5] as reasonable attorney's fees pursuant to section 33.48. The City and HISD state in their brief:

> [I]n the instant case, it is undisputed that for tax years 1985 and 1986 (i) the taxing unit had (a) contracted with an attorney to collect its taxes, (b) taken official action to adopt the Section 33.07 Penalty (c) notified the property owner in a timely basis of the delinquency and the penalty and (ii) as to the City the 1985 and 1986 taxes were delinquent as of July 1, 1986 and July 1, 1987, respectively, and as to HISD the 1986 taxes were delinquent as of July 1, 1990.

The court in *Salvaggio v. Houston Independent School District*, 752 S.W.2d 189 (Tex.App.—Houston [14th Dist.] 1988, writ denied), stated that three separate actions must be taken before the penalty may be imposed pursuant to section 33.07. They are:

> (1) the taxing unit must contract with an attorney pursuant to § 6.30 of the Tax Code;
> (2) the taxing unit must take action "in the manner required by law for official action by the body" to impose the penalty (such as passing a resolution as in this case); and
> (3) notice of the delinquency and of the penalty must be delivered to the property owner within the required period of time.

*Id.* at 192.

In *Uvalde County Appraisal District v. Parker*, 733 S.W.2d 609, 611 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.), the trial court held that the district was not entitled to the penalty permitted by section 33.07 because of its failure to comply with the notice requirements of section 33.07.

The judgment of the trial court was affirmed by the court of appeals.

■ In the instant case, the City and HISD had contracted with an attorney for the collection of delinquent taxes pursuant to section 6.30. However, there is nothing in the record that shows that either the City or HISD took any official action to adopt section 33.07 penalty or that either of them timely notified Russo Properties, Inc., the owner of the property, of the tax delinquency and the section 33.07 penalty for the 1985 and 1986 tax years.

Furthermore, the section 33.01 base penalties for the delinquent taxes for the tax year 1987 were paid on April 28, 1988, and accepted by the City and HISD to the exclusion of the section 33.07 penalty and the section 33.48 attorney's fees.

■ Contrary to the contentions of the City and HISD, sections 33.07 and 33.48 are not completely unrelated statutory provisions; they complement each other and there is an equivalence of purpose between the two sections. Section 33.07 collection fee penalties are not recoverable where attorney's fees are allowed for any tax year, and vice versa. To provide otherwise would permit a double recovery of costs.

■ Section 33.07 is designed to pay the taxing unit's collection costs, which in this case have been stipulated to be entirely attorney's fees. After April 29, 1988, the only "costs" expended by the City and HISD were in connection with the dispute over the amount of collection costs and attorney's fees, and the application of the proceeds of the checks. The expenses related to the application of such proceeds are not expenses that should be recovered by the City and HISD. The expenses relating to the dispute over the amount of collection costs and attorney's fees are not the "collection costs" that section 33.07 was intended to defray, since it was not intended by the legislature for a delinquent taxpayer to pay collection costs for the cost of collecting costs. *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex.1981).

---

**4.** *Alleged* to be $52,282.00 for the City and $65,975.72 for HISD.

**5.** Alleged to be $73,572.75 for both the City and HISD.

We hold that neither the City nor HISD is entitled to recover a section 33.07 penalty in their suit for collection of delinquent taxes and section 33.01 penalties and interest for the 1985 and 1986 tax years.

There is evidence that the City and HISD sought to recover, in addition to the delinquent taxes due and section 33.01 penalties and interest, a sum of money of at least $181,930.56. This sum, however, included a section 33.07 penalty ($118,557.72), which costs are limited to the 1985 and 1986 tax years. They do not seek section 33.48 attorney's fees for those years. They do seek section 33.48 attorney's fees for the year 1987, but do not seek a section 33.07 penalty for that year. The issue of attorney's fees, therefore, is limited to reasonableness of such fees for the collection of 1987 taxes.

■ Any statute which permits a recovery of attorney's fees is penal in nature and is to be strictly enforced. *New Amsterdam Casualty Co. v. Texas Indus., Inc.,* 414 S.W.2d 914, 915 (Tex.1967).

■ When recompense is sought under a statute that provides for the imposition of attorney's fees, the amount of attorney's fees to be awarded is subject to the dictates of the legal profession's ethical rules and the power of the trial court to limit the amount of the award. *Carrington v. Hart,* 703 S.W.2d 814, 817 (Tex.App.—Austin 1986, no writ); *Fowler v. Stone,* 600 S.W.2d 351, 353 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

■ As a general rule, an award of attorney's fees pursuant to a statute where the award is contested, is within the discretion of the trial court. *Rocha v. Ahmad,* 676 S.W.2d 149, 154 (Tex.App.—San Antonio 1984, writ dism'd w.o.j.); *Reintsma v. Greater Austin Apartment Maintenance,* 549 S.W.2d 434, 437 (Tex.Civ.App.—Austin 1977, writ dism'd w.o.j.). The award of attorney's fees pursuant to a statute must be reasonable under the particular circumstances shown by the record. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 284 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

■ In a document denominated "JOINT PRE–TRIAL ORDER," it was represented to the trial court that "the parties will submit expert witness testimony by deposition as to attorney's fees issues and therefore, no further testimony shall be required at trial." Counsel for both parties signed the document. Depositions of the "expert" witnesses concerning the reasonableness of attorney's fees for each litigant were furnished the trial court. Neither party objected to the testimony of such witnesses on the ground that the witness was not an expert on the issue of attorney's fees or that the witness was not qualified to testify concerning the reasonableness of the amount, if any, to be awarded.

According to the testimony presented by the City and HISD, their attorney, Heard, Goggan, did not keep any record of the hours devoted to its preparation for trial of the case. It was stated by their expert, a lawyer and partner in the law firm of Heard, Goggan, that generally, the filing of tax suits to recover delinquent taxes is fairly automatic and computerized. Their expert did not present any objective evidence of the work performed by their attorney in this particular case; he admitted that he did not have any particular knowledge of the facts in this case, and that the 15 percent "customary" fee sought by the City and HISD as attorney's fees was reasonable only in the context of overall collection contracts statewide.

The legal services furnished the City and HISD, in addition to routine investigatory and clerical work, were: (1) the entry of an appearance and the filing in the bankruptcy court of a statement in support of First City Bank's motion to release the Property from the bankruptcy court; and (2) the preparation and filing of three petitions in the trial court prior to April 28, 1988, prepared for the most part from computerized information furnished by the taxing units.

First City Bank presented as their expert witness, a lawyer who, some 10 years before trial, was associated with First City Bank's counsel in this case. There is evidence that he was a commercial litigator,

who was familiar with property tax litigation in general, and the facts of this case specifically, with no interest in the outcome of this case. He testified that a reasonable attorney's fee in this case as compensation for the attorneys for the City and HISD would be $15,000.00 and that an attorney's fee of $192,000.00 seemed to be unreasonable, because it "is excessive for the time, effort and expertise required to accomplish the work described therein." He further testified that the case was not novel, complex, time-consuming, did not require unusual skills, and Heard, Goggan "undertook no monetary risk" in filing suit to collect the delinquent taxes.

The City and HISD also rely on the presumption under TEX.CIV.PRAC. & REM. CODE ANN. § 38.003 (Vernon 1986) that usual and customary attorney's fees are reasonable. However section 38.003 only provides this presumption for claims of the type described in TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). They have not presented any evidence that their claim merits this requirement. *See Smith v. Smith,* 757 S.W.2d 422, 425 (Tex.App.—Dallas 1988, writ denied). That section does not apply to the case at bar. The presumption is not conclusive, but is rebuttable. Even if it did apply, it was rebutted under the 12 factor analysis set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). Here, the issue is not the reasonableness of usual and customary attorney's fees with respect to Heard, Goggan's contracts for the collection of delinquent taxes, but the issue is the reasonableness of attorney's fees that the City and HISD sought to collect from First City Bank.

Section 33.48 provides only for "reasonable attorney's fees approved by the court and not exceeding 15 percent...." It does not provide that the taxing unit *must* receive 15 percent. Since the section provides for reasonable attorney's fees, reasonableness is a fact that must be established by the taxing units. *Corporate Funding, Inc. v. City of Houston,* 686 S.W.2d 630, 632 (Tex.App.—Texarkana 1984, writ ref'd n.r.e.).

The attack by the City and HISD on First City Bank's expert witness concerning attorney's fees is an attack on the weight given to that testimony rather than the admissibility; therefore, this point of error is inappropriate for appellate review. It is for the trier of fact, in this case the trial court, to judge the credibility of the witnesses, and to assign the weight to be given to their testimony. It is incumbent upon the appellate court not to substitute its judgment for that of the trier of fact. *Hixson v. Pride of Texas Distributing Co.,* 683 S.W.2d 173, 179 (Tex.App.—Fort Worth 1985, no writ).

The City and HISD state that First City Bank presented "no evidence as to the reasonableness" of the attorney's fees sought. First City Bank did, however, present evidence of the *unreasonableness* of the fees sought, as well as evidence of the amount that would constitute a *reasonable* fee. Moreover, the City and HISD had the burden of proving that their attorney's fees were *reasonable.* First City Bank did not have the burden of proving they were *unreasonable.* A claim of "no evidence" is, therefore, inappropriate. *Meyerland Co. v. Palais Royal of Houston, Inc.,* 557 S.W.2d 534, 535 (Tex.Civ. App.—Houston [1st Dist.] 1977, no writ).

The City and HISD also state that First City Bank did not have standing to object to attorney's fees that they sought to collect from First City Bank. We disagree. First City Bank does have standing to challenge the reasonableness of the attorney's fees that the City and HISD seek to recover from it.

The second point of error is overruled.

The City and HISD in their fourth and final point of error assert that "the trial court erred in not granting appellants the right to foreclose on the liens secured by the property." We do not agree.

At the trial of this case, neither the City nor HISD presented evidence to the court on the issue of foreclosure of the tax liens. Following the conclusion of the trial, they did not request any findings of fact or

conclusions of law concerning their right to foreclose, and this issue was not presented in their motion for new trial. As a result they failed to raise an objection at the trial court level and this issue is waived for purposes of appeal. Tex.R.App.P. 52(a); *PGP Gas Products, Inc. v. Fariss*, 620 S.W.2d 559, 560 (Tex.1981). The fourth point of error is overruled.

### THE APPEAL OF FIRST CITY BANK

■ First City Bank contends in its first point of error that the trial court erred in holding that the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") is not applicable to bar the property tax penalties assessed against it. In addition to the "BACKGROUND" facts stated above, there are additional facts which bear upon First City Bank's appeal.

On September 9, 1987, A. Robert Abboud ("Abboud") entered into a consulting agreement with Old First City Bank. Under the terms of the agreement, Abboud and his advisers were "to facilitate and implement the reorganization [of Old First City Bank]." On April 19, 1988, Abboud and other investors acquired the stock of New First City Bank, which purchased the assets and assumed the liabilities of Old First City Bank.

As a part of the reorganization, the FDIC paid New First City Bank approximately 43 million dollars to purchase nonvoting convertible preferred shares, Series D stock in New First City Bank. The common stock in Collecting Bank was issued to shareholders of Old First City Bank. The subsidiary banks of New First City Bank ("Subsidiaries") were issued 97 million shares of nonvoting preferred class A stock. The directors of Collecting Bank were issued 30 shares of voting class B preferred stock ("Directors' stock"). The Subsidiaries transferred the class A preferred stock to the FDIC in exchange for promissory notes in the amount of 970 million dollars ("FDIC Notes"). The Subsidiaries transferred loans, interests in loans, real estate, stock and other assets to Collecting Bank in exchange for Series A pre-ferred stock and 781 million dollars in notes ("Subsidiary Notes"). Collecting Bank is to sell all of the assets it acquired from the Subsidiaries.

Collecting Bank is a national bank. The directors are elected by the shareholders who own voting stock. The board of directors has the exclusive authority to appoint the officers of Collecting Bank, to define their duties, to set their salaries, and to dismiss them. In addition, the board of directors has the authority to "manage and administer the business and affairs of the Association." The cash paid to Collecting Bank for the sale of its assets will be used to pay expenses.

At any time after April 19, 1998, the FDIC can require that New First City Bank and the Subsidiaries repurchase at least enough Series A preferred stock at $10.00 per share to equal 100 million dollars.

Among other things, the trial court concluded:

> The Financial Institutions Reform, Recovery and Enforcement Act of 1989 (hereinafter "FIRREA") is not applicable to bar tax penalties assessed when the FDIC was neither acting as a receiver nor was a party to the suit.

FIRREA was signed into law on August 9, 1989. Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 183 (codified at 12 U.S.C. § 1811 (1989)). Among other purposes listed by Congress in enacting the law, it was specifically stated that the Act was designed:

> (1) to put the federal deposit insurance funds on a sound financial footing; and

> (2) to provide funds from public and private sources to deal expeditiously with failed depository institutions.

FIERRA, § 101(5), (8), 103 Stat. 183, 187 (1989).

Section 219 of FIRREA amended section 15 of the Federal Deposit Insurance Act (the "FDIA") to read as follows:

> (b) OTHER EXEMPTIONS.—When acting as a receiver, the following provi-

sions shall apply with respect to the [Federal Deposit Insurance] Corporation.

(3) *The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate or recording tax or any recording or filing fees when due.*

12 U.S.C. § 1825(b)(3) (1989) (emphasis added).

The amended section 1825(b)(3) applies both when the FDIC acts in its capacity as a receiver of a failed bank, and when the FDIC operates in its corporate capacity. In this regard, FIRREA added 12 U.S.C. § 1823(d)(3)(A), which provides that "with respect to any asset acquired or liability assumed pursuant to this section, the Corporation shall have all rights, powers, privileges, and authorities of the Corporation as a receiver under sections 1821 and 1825(b)." 12 U.S.C. § 1823(d)(3)(A) (1989).

The FDIC is not a party to this appeal, nor has it ever been appointed, or acted, as a receiver for First City Bank or Collecting Bank. The FDIC in this case is a lender only. Its legal relationship with Collecting Bank is as a shareholder. It has received preferred stock from Collecting Bank and its Subsidiaries, including First City Bank. It is not the equity owner of Collecting Bank, nor is it the owner of the Property. Collecting Bank is a separately chartered entity, whose directors are private citizens and are elected by the voting shareholders of Collecting Bank. The FDIC only holds nonvoting shares.

The receivership of a national bank is a specific legal status and is controlled by 12 U.S.C. §§ 191, 192 (1989). These sections provide for a determination by the office of the Comptroller of the Currency and the appointment of a receiver for the failed bank, which may be the FDIC. However, that was not done in the case at bar.

FIRREA was enacted as a comprehensive package of reforms. It may be assumed that had Congress intended immunity from liability for taxes to extend to situations in which the FDIC owns nonvoting stock in a company that owns real estate, that language would have been included as part of the comprehensive package. In the instant case, the FDIC acquired an asset from the Subsidiaries as a part of the reorganization and rehabilitation of New First City. The asset was 970 million dollars in Series A preferred stock. If HISD or the City attempted to assess a personal property tax on the preferred stock, a defense could be raised by the FDIC that it cannot be taxed on the value of the preferred stock because it is exempt from personal property taxes under FIRREA.

Even if the FIRREA protections extend to First City Bank and Collecting Bank, First City Bank's debt to the City and HISD were incurred prior to the adoption of FIRREA. Laws of the United States are presumed to apply prospectively and not retroactively. *United States v. Security Indus. Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982).

The post-FIRREA opinion in *Federal Deposit Insurance Corp. v. Jenkins*, 888 F.2d 1537 (11th Cir.1989), deals with whether a court may judicially expand FDIC defenses. In that case, the FDIC became the sole owner of all claims, actions, and judgments of a failed bank after an assumption and purchase agreement. It sought a declaratory judgment that all shareholders' claims, except those based on securities law, were derivative actions and thus, as a general creditor of the bank and assignee of any causes of action, the FDIC had priority over shareholders' claims. The FDIC argued that a necessary element of a purchase and assumption transaction is an absolute priority for it in suits against third parties in that such priority would best aid the FDIC in replenishing the permanent insurance fund. The court held that although "the FDIC should take all feasible measures to maximize recovery to the fund", it [the court] could not "approve of judicial expansion of the express powers and rights granted to the FDIC by Congress." *Id.* at 1541. Because the Federal Deposit Insurance Act contained no indication of an intention to create an absolute

priority rule in favor of the FDIC, the Eleventh Circuit Court reversed the district court's finding that was based on policy consideration.

 First City Bank further argues that federal common law prohibits an assessment of a section 33.07 penalty. It asserts that Collecting Bank is a successor in interest to the FDIC, that the FDIC has a continuing interest in the operations of Collecting Bank, and that, therefore, Collecting Bank and it inherit the defenses available to the FDIC. In support of this assertion, it relies on several cases dealing with the doctrine established in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).[6] While it is correct that these cases allow successors in interest to assert *D'Oench Duhme's* equitable estoppel theory, neither First City Bank nor Collecting Bank is a successor in interest to the FDIC.

 The issuer of preferred stock is not the successor in interest to the ultimate holder of the stock. In the instant case, Collecting Bank is the successor in interest to First City Bank by virtue of the transfer by it of its interest in the Russo Loan. *D'Oench Duhme* and its progeny are inapplicable to this case.

Further, the holdings in the *D'Oench Duhme* line of cases have as their underlying policy consideration the protection of the FDIC and its successors in interest from the dangers inherent in the speedy transfer of assets under most purchase and assumption agreements. As stated in *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.1982):

> [A] purchase and assumption must be consummated with great speed, usually overnight in order to preserve the going concern value of the failed bank and avoid an interruption in banking services. Because the time constraints often prohibit a purchasing bank from fully evaluating its risks, as well as to make a purchase and assumption an attractive business deal, the purchase and assumption agreement provides that the pur-

chasing bank need purchase only those assets which are of the highest banking quality.

The purchase of New First City Bank was hardly an "overnight" transaction, since over eight months elapsed from the signing of a consulting agreement with Abboud to the closing of the sale. In that time, a careful evaluation of the risks could be made.

The trial court correctly concluded that FIRREA is not applicable to bar tax penalties. The FDIC was not a receiver of any bank, was not acting as a receiver, was not the owner, legal or equitable of the property, and was not a party to the suit. First City Bank's first point of error is overruled.

 First City Bank asserts in its second point of error that the trial court erred in holding that Heard, Goggan was not liable for attorney's fees. We do not agree.

Among other things, the trial court concluded that attorney's fees are not recoverable against a person acting as an attorney for the party where the party breached a contract, and although a breach of accord and satisfaction had occurred as a matter of law for which First City Bank was entitled to $40,000.00 in attorney's fee, Heard, Goggan was not liable for such fees.

It is undisputed that First City Bank expended in excess of $40,000.00 in attorney's fees to force the City and HISD to comply with the terms of the accord and satisfaction. It is also undisputed that Heard, Goggan and United Governmental Services of America, Inc. and United Governmental Services, Inc., its affiliated company, collected delinquent taxes for the City and HISD under a valid contract between the taxing units and Heard, Goggan, but the decision to accept the checks tendered by First City Bank and apply the proceeds thereof to the Russo Properties, Inc. property tax accounts in a manner different from that instructed, thereby breaching the accord and satisfaction, was made solely by the City and HISD. The

---

**6.** Now codified at 12 U.S.C. § 1823(e) (1989).

checks were payable to the order of the taxing units and *not* to the order of Heard, Goggan.

▮ Tax collections activity by a city or a school district is a governmental function and not a proprietary function. *Black v. Baker*, 130 Tex. 454, 458, 111 S.W.2d 706, 708 (1938).

It has long been the established rule in Texas that where an agent acts on behalf of a disclosed principal, as in the case here, and within the scope of the authority conferred on him, it will not ordinarily be personally liable to the other party to the contract, in the absence of an agreement to the contrary or other circumstances showing that he has, either expressly or impliedly, assumed such liability. 3 TEX.JUR.3d *Agency* § 154 (1980). "In a legitimate transaction, an agent is ordinarily liable only to his principal." *Sinclair Houston Federal Credit Union v. Hendricks*, 268 S.W.2d 290, 296 (Tex.Civ.App.—Galveston 1954, writ ref'd n.r.e.). The above rule is subject to the following exceptions: (1) where the agent contracts in his own name; (2) where the principal is undisclosed; (3) where the agent is authorized to act as the owner of the property; and (4) where the agent has an interest in the subject matter of the contract. 3 TEX.JUR.2d *Agency* § 157 (1980). None of the exceptions is applicable to this case.

First City Bank states, "Heard, Goggan made the decision to accept the checks tendered by First City." We do not agree. The decision was made by personnel of the taxing units' tax offices. Heard, Goggan, in advising the taxing units to accept the checks and to apply the proceeds thereof in a manner different from the instructions, if they did so advise their principals, did not participate "in breaching the contract," as argued by First City Bank. This is not a case where an action will lie against an agent because of a wrong for which the agent is personally and independently responsible. *Briggs v. Rodriguez*, 236 S.W.2d 510, 515 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.).

Again, it was the City and HISD that made the decision to accept the checks and

to ignore the instructions concerning the application of the proceeds thereof. The advice given the tax officials of those governmental agencies by Heard, Goggan, their attorneys and collecting agents, was not unlawful. The cases, *Black v. Baker*, 111 S.W.2d at 706; *City of Garland v. White*, 368 S.W.2d 12 (Tex.Civ.App.—Eastland 1963, writ ref'd n.r.e.); *Archer v. City of Cisco*, 211 S.W.2d 955 (Tex.Civ.App.—Eastland 1948, no writ), cited by First City Bank for the proposition that Heard, Goggan is not immune from liability for the consequences of its actions because it is an independent contractor, have no bearing on this appeal. In *Black*, the mayor of the city of Hereford, without formal authority by the city council, took action to collect taxes; he was held to be personally liable for such action. In both *Archer* and *City of Garland*, policemen, who committed unlawful acts, were held to be personally liable for the resulting damages. Because the facts in the cited cases are distinguishable from those in the case before this Court, they are not authority for holding Heard, Goggan liable for attorney's fees.

▮ First City Bank further argues that a governmental function becomes a proprietary function if performed under contract by another party. That may be true in some cases, but is not in this case. Tax collection is a governmental function, and the mere fact that the tax collection function has been assigned to a private law firm does not change the nature of the function from governmental to proprietary.

In the case of *City of Round Rock v. Smith*, 687 S.W.2d 300 (Tex.1985), relied upon by First City Bank, the supreme court held that the City of Round Rock was not liable to homeowners for flood damage to their homes because the city had approved a plat. It held that plat approval was a quasi-judicial function, and therefore not proprietary. It further held that construction and maintenance of storm sewers is a proprietary function, and *if* the city had *constructed* storm sewers, it would have been liable for damages. In this case, the action taken by Heard, Goggan was within the course and scope of its agency relation-

ship with the City and HISD as their attorney in delinquent tax collection matters. It was legally authorized to prosecute suits on behalf of the City and HISD.

Under section 33.41, the governmental entity must utilize the courts in order to enforce its rights to collect unpaid delinquent tax accounts. A governmental entity can appear in the courts only by and through an attorney. TEX.R.CIV.P. 7. It does not matter whether the attorney is a payroll employee of the governmental unit, or a private attorney. Both are agents representing the governmental unit. Since the intended purpose of section 101.055 was to insure immunity to the taxing unit while performing the governmental function of collecting revenue, imposing personal liability upon its agent while performing this governmental function would be contrary to public policy.

The trial court correctly concluded that attorney's fees incurred by the First City Bank and HISD are not recoverable against Heard, Goggan, the attorneys and delinquent collecting agent of the taxing units. First City Bank's second point of error is overruled.

The judgment of the trial court is affirmed.

COHEN, J., concurs.

O'CONNOR, J., dissents.

COHEN, Justice, concurring.

Cases like this cause one to reflect upon why we have courts. Courts exist to protect people from abuse. Our most precious constitutional rights rest on the principle that the greatest potential abuser is the government. Whether through accord and satisfaction or some other doctrine, courts should be open to cure abuses like the one in this case. The public interest, and that of all taxpayers, will be served if governments know that and act accordingly.

In her dissenting opinion, Justice O'Connor concludes that we should take judicial notice of Houston City Ordinance 44–16. Thus, she would render judgment for the City and for HISD because they had no choice but to apply the money in accordance with the ordinance.

I believe that even if we judicially notice the ordinance, neither the City nor HISD is entitled to judgment. The ordinance does not apply to HISD. Thus, whatever the ordinance's effect, HISD cannot benefit from it. As for the City, the ordinance should not protect it because the record shows the City had an option other than following the ordinance. It could have returned the check.

## ORDINANCE 44–16 DOES NOT APPLY TO HISD

Houston Ordinance 44–16, set out in the dissenting opinion, applies only to the tax assessor-collector "of the City." The City of Houston presumably would have no power to enact an ordinance governing the tax collection practices of a separate government entity, such as HISD. In any event, the City has not done so in ordinance 44–16.

## ORDINANCE 44–16 SHOULD NOT PROTECT THE CITY

The City contends it could not apply the funds as directed in First City's transmittal letter or in any other manner, except that provided by the ordinance. If the City could not accept the conditions that accompanied the tender, it should have returned the checks, as was its prior practice.

The City and HISD stipulated that they understood the instructions on the checks and transmittal letters. Despite that, they kept the money. There was evidence that this was the opposite of the City's normal practice. Gordon Welch testified about the City's practices upon receiving conditional tenders of tax payments. When this dispute arose, Welch was employed as a legal assistant at First City's law firm and he participated in this transaction. Before that, he was employed as a supervisor of research for Heard, Goggan, Blair & Williams, the law firm that represented the City and HISD in this transaction and that received the checks. Before that, Welch worked as a legal assistant for the City of Houston. From his experience, Welch testified that if a taxpayer made a partial payment and requested a specific allocation

the City could not make, the City normally would return the taxpayer's check. He knew of several instances where such checks were returned, and he knew of no instances where such checks were not returned. Based on Welch's testimony, the trial court could have concluded that the City should have returned the checks. This would support the finding of accord and satisfaction.

UNCONSTITUTIONALITY OF ORDINANCE 44–16 AS APPLIED

First City contends the ordinance is unconstitutional because, as applied by the City, it violates article 1, section 13 of the Texas Constitution, the open courts provision. On its face, the ordinance does not affect First City's right to redress. However, First City contends that applying the payments as stated in the ordinance would moot any challenge to the penalty statutes because the penalties would then be paid in full and not refundable.

First City says it had three options:

1. Pay on condition, as it did.
2. Pay nothing and risk foreclosure.
3. Pay in full, even though courts will not order refunds of "voluntary" payments. *See Salvaggio v. Houston Indep. School Dist.*, 709 S.W.2d 306, 308 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd, w.o.j.)

First City argues that options 2 and 3 are no options at all, and if it cannot get relief as it did in this suit, then the courts are closed to its claim. This is no frivolous contention.

Courts should avoid constitutional decisions if a case can be decided on nonconstitutional grounds. Moreover, courts should not hold an ordinance unconstitutional, if it can be construed in a constitutional manner. By affirming this judgment, we uphold First City's access to the courts. We also preserve the public interest in judicial review of government conduct deserving close scrutiny. Consequently, we need not rule on the constitutional issue.

For these reasons, in addition to those stated in Justice Bissett's opinion, I concur.

O'CONNOR, J., dissenting.

O'CONNOR, Justice, dissenting.

I disagree with the majority's resolution of point of error three. In point of error three, the City argues that the writing on the face of the checks did not constitute a conditional endorsement, and the trial court should not have ordered that the amounts be reallocated. I agree. The majority overruled that point of error on two grounds: (1) we cannot consider the City's ordinance, which mandates how the tax assessor must apply a partial payment, because it was not introduced at trial; and (2) when the City accepted the checks with the conditional endorsement, the doctrine of accord and satisfaction required the City to apply the funds as directed.

First, I disagree with the majority's refusal to consider the effect of City Ordinance Section 44–16 *as to the City's appeal.* The majority says we cannot consider it because it was not introduced at trial, and cites two cases that pre-date the adoption of the Texas Rules of Civil Evidence. Rule 204 states

A court upon its own motion may, or upon the motion of a party shall, take judicial notice of the ordinances of municipalities and counties in Texas ... Any party requesting that judicial notice be taken of such matter shall furnish the court sufficient information to enable it properly to comply with the request and shall give all parties such notice, if any, as the court may deem necessary, to enable all parties fairly to prepare to meet the request.

In *State v. Sungrowth VI, California Ltd.*, 713 S.W.2d 175, 178 n. 2 (Tex.App.—Austin 1986, writ ref'd n.r.e.), the court said:

Although this provision of the Austin Zoning Ordinance was not introduced into evidence at trial, we may nevertheless take judicial notice of its provisions. Under Tex.R.Evid.Ann. 204 (Supp.1986) (eff. Nov. 1, 1984), a trial court may now take judicial notice of a municipal ordinance. An appellate court may take judicial notice of facts which may be properly noticed by a trial court even thought

the trial court was not formally requested to do so and did not formally announce that it had done so.

The majority is in error in refusing to consider the ordinance.

Section 44–16 of the Code of Ordinances for the City of Houston, states that it will apply a partial payment to the oldest delinquent year first in full. When the amount tendered is not sufficient to pay a delinquent tax year in full, the remainder is applied to outstanding tax, penalty, and interest on a pro rata basis. Section 44–16 of the City ordinance states:

> The tax assessor-collector of the city is hereby authorized to accept partial payment on delinquent taxes and the penalty and interest due thereon, subject to the conditions set out here; provided, each partial payment shall be credited against the oldest delinquent tax year or years, and provided further, that each payment shall be divided into the part of the tax actually paid and the penalty and interest due on such part to the date of the partial payment. The tax assessor collector shall issue a "partial payment receipt" to the taxpayer showing the actual amount paid broken down into tax, penalty and interest. Such partial payment shall be apportioned ratably to the city and school taxes due for the year or years to which they are applied and they shall be in amounts which will clear the delinquency within a reasonable time.

(Code 1968, § 44–40.1; Ord. No. 69–699, § 1, 5–28–69).

The notice on the check and in the letter that accompanied the checks, was an attempt by First City to circumvent the City's ordinance.[1] First City was charged with the knowledge of the ordinance and knew that no representative of the City could agree to the conditions on the checks.

Second, I disagree with the majority's holding that the doctrine of accord and satisfaction required the City to apply the funds as directed. The majority states that the City and HISD chose to ignore the instructions on the checks and in the letter regarding application of the funds.

Accord and satisfaction played no role in this dispute. Accord and satisfaction rests upon a new contract, express or implied, in which the parties agree to discharge the existing obligation by a lesser payment tendered and accepted. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1970); *Christian v. University Federal Sav. Ass'n*, 792 S.W.2d 533, 534 (Tex.App.—Houston [1st Dist.] 1990, no writ). The evidence must show an agreement that the debtor's payment fully satisfied the entire claim. *Christian*, 792 S.W.2d at 534. Such conditions must be plain, definite, certain, full, explicit, and susceptible to no other interpretation. *Id.*

Here, when First City tendered the checks, the tax assessor could not have agreed to take it according to the instructions on the face of the checks because to do so would violate the City's ordinance. Thus, no representative of the City could have agreed to any terms regarding the application of the tendered amounts. In addition, First City paid the *undisputed* part of what it owed, not a *disputed* portion. First City did not tender a lesser payment for what it owed in satisfaction of the entire debt; it merely paid part of the debt, asked that it be applied to a certain accounts, and attempted to reserve the disputed parts for later resolution. I can find no authority that permits the doctrine of accord and satisfaction to apply when a party attempts to pay the undisputed part of a debt, and attempts to reserve the disputed part for later resolution.

I would reverse in favor of the City and HISD.

COHEN, J., concurs.

---

1. The concurring opinion states that the government in this case abused First City. First City was ably represented by one of the largest law firms in this City and, it is well-known, has often represented the City of Houston in much litigation. The point of this is that First City, through its lawyers, was well aware of the City's ordinance. If there was an abuse in this case, and I do not make that argument, it is more likely that the abuse was received by the City, not imposed by the City.