TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00382-CV






Ronald T. Mahan/Robert L. Lehman, Individually and as Assignee of the City of


Georgetown; Georgetown Independent School District; Williamson County


Education District; and County of Williamson, Appellants



v.



Robert L. Lehman, Individually and as Assignee of the City of Georgetown;

Georgetown Independent School District; Williamson County Education

District; and County of Williamson/Ronald T. Mahan, Appellees





FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 98-239-T-26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING





 Ronald T. Mahan appeals the district court's judgment in favor of Robert L.
Lehman in a case for foreclosure of an ad valorem tax lien. Lehman appeals the district court's
failure to award him attorney's fees. We will affirm that portion of the district court's judgment
in favor of Lehman, reverse that portion of the judgment denying Lehman attorney's fees and
remand to the trial court for determination of attorney's fees.


BACKGROUND


 In the 1960s, Ronald Mahan owned approximately ninety-three acres of land in
Williamson County: an 88-acre single tract and an adjoining 4.93-acre tract. In 1985, Mahan lost
his open-space exemption for the eighty-eight acre tract and became unable to pay the taxes on
that tract. Between 1985 and 1994, taxes accrued and became delinquent on the entire eighty-eight acre tract. In 1990, the City of Georgetown, Georgetown Independent School District, the
Williamson County Education District, and the County of Williamson (the "taxing authorities")
filed suit against Mahan to collect the delinquent taxes.

 On April 25, 1995, a Williamson County district court rendered judgment in favor
of the taxing authorities against Mahan for delinquent taxes, accrued statutory penalties and
interest, and attorney's fees and costs. The judgment ordered Mahan to pay the delinquent taxes
according to a specified schedule over a twelve month period, specifically: $50,000 no later than
July 1, 1995; $5,000 no later than December 31, 1995; all 1995 ad valorem taxes no later than
January 31, 1996; and all remaining sums due under the judgment no later than July 1, 1996. The
judgment also ordered a statutory tax lien on the property for the amount of delinquent property
taxes and accrued statutory penalties, interest, costs, and expenses.

 In an attempt to pay the delinquent taxes and satisfy the judgment, Mahan sought
to sell part of the eighty-eight acre tract. To this end, Mahan executed an earnest money contract
with David Sawyer ("Sawyer"), acting on behalf of Sawyer Companies, Inc. ("SCI"), in which
Mahan agreed to sell the eastern thirty acres ("Tract 1") of the eighty-eight acre tract to SCI for
$270,000, with SCI also receiving the option to purchase the middle thirty acres ("Tract 2") of
the eighty-eight acre tract. The contract provided that SCI would pay $50,000 cash down at
closing directly to the taxing authorities against Mahan's delinquent taxes, and further provided
for the execution of a non-recourse promissory note to Mahan in the amount of $220,000 (the
"SCI promissory note"). The earnest money contract provided that SCI would pay Mahan's
delinquent taxes in accordance with Mahan's obligations under the schedule established in the
delinquent tax judgment: SCI would pay to Mahan $5,000 on December 31, 1995; all 1995 ad
valorem taxes by January 31, 1996; and the balance due on all remaining sums on July 1, 1996.

 To fulfill its obligation to Mahan under the earnest money contract, SCI engaged
a third investor, Ersa-Grae Corporation ("Ersa-Grae"), in June 1995. SCI and Ersa-Grae entered
into an agreement in which Ersa-Grae, acting as a lender, agreed to help SCI close its purchase
of Tract 1.

 The closing of Tract 1 occurred on June 23, 1995. Ersa-Grae paid $50,000 at
closing, which went to the taxing authorities, and SCI assigned to Ersa-Grae all of SCI's rights
and interest as to Tract 1 under the earnest money contract between SCI and Mahan. Mahan
agreed to the assignment and conveyed Tract 1 to Ersa-Grae by general warranty deed. Ersa-Grae
then issued a promissory note to Mahan for the balance owing on Tract 1 (the "Ersa-Grae
promissory note"). The promissory note provided that Ersa-Grae would pay Mahan $5,000 by
December 31, 1995; the 1995 ad valorem taxes by January 31, 1996; and all remaining taxes plus
all remaining sums due under the Ersa-Grae promissory note, by July 1, 1996. The payment
provisions of the Ersa-Grae promissory note mirrored both the original delinquent tax judgment
as well as the terms of the earnest money contract between Mahan and SCI.

 After the closing of Tract 1, the Williamson County Appraisal District created new
bookkeeping accounts on the property to reflect new ownership. Tract 1 was thereafter identified
by an account number ending in "40C" in the name of the new owner, Ersa-Grae. The
approximately thirty-three acres in the middle tract were given an account number ending in
"40B." Mahan's homestead retained the account number ending in "40." Two small portions
of the property in the northwest corner of the eighty-eight acres were given account numbers
ending in "40A" and "40AA."

 On July 1, 1995, the due date under the tax judgment for Mahan's $50,000 tax
payment, payment was made to the taxing authorities with the money Ersa-Grae had paid at
closing. Before the December 31, 1995 deadline, by which time $5,000 was due under the tax
judgment, Ersa-Grae paid $5,000 to Mahan; the taxing authorities were subsequently paid on
December 26, 1995. Thus, the only outstanding obligations remaining under the tax judgment
were (1) the 1995 ad valorem taxes, due on January 31, 1996, and (2) all remaining sums due
under the judgment, due no later than July 1, 1996.

 Before January 1996, Lehman and Sawyer's son, Charles Sawyer, formed a
company called Twin River Development, L.L.C. ("Twin River"). In January 1996, SCI
assigned to Twin River all interests SCI might have left in (1) the earnest money contract between
Mahan and SCI, (2) the assignment agreement between SCI and Ersa-Grae, and (3) Tract 1 and
Tract 2.

 By January 31, 1996, Ersa-Grae timely made payment to Mahan as required by the
terms of the Ersa-Grae promissory note and all Mahan's 1995 ad valorem taxes were paid. The
only remaining obligation under the tax judgment was the obligation to pay the balance of all
delinquent taxes by July 1, 1996. Although the earnest money contract between Mahan and SCI
required SCI or its assignees to pay the remaining balance of the delinquent tax judgment by July
1, 1996, and the Ersa-Grae promissory note contained an identical provision, neither SCI, nor
Ersa-Grae, nor Twin River made the required payment. SCI requested that the taxing authorities
extend the July 1 deadline. The taxing authorities consented and the taxing authorities, Mahan,
and Twin River entered into a delinquent tax compromise and settlement agreement whereby the
time to pay all outstanding delinquent taxes was extended until December 31, 1996. The
remaining balance of the delinquent tax judgment, however, was not paid by that date.

 Mahan consequently sent a letter to Ersa-Grae, SCI, and Twin River in January
1997 notifying them of the default under the Ersa-Grae promissory note and demanding payment
of all remaining sums due under the note. Twin River responded to Mahan's notice of default in
a letter proposing to have a third-party investor purchase the taxing authorities' tax liens pursuant
to section 32.06 of the Texas Tax Code, which authorizes the transfer of a tax lien to a person
who pays the delinquent taxes on another person's property. See Tex. Tax Code Ann. § 32.06
(West Supp. 2001). Mahan rejected Twin River's proposal and declined to give his consent for
such a transfer. The taxing authorities subsequently scheduled a foreclosure sale of the entire
eighty-eight acre tract for June 3, 1997.

 In May 1997, Ersa-Grae authorized Lehman to pay the delinquent taxes and obtain
the tax lien on Tract 1. Lehman attempted to pay only a pro-rata portion of the total taxes due,
but the taxing authorities required payment of all taxes assessed on the entire eighty-eight acre
tract in order to transfer the lien against Tract 1. Lehman paid the delinquent taxes on the entire
tract and the taxing authorities transferred the tax lien on Tract 1 to Lehman.

 In November 1997, Lehman, on behalf of Twin River, sent a letter to Mahan
regarding the status of Tract 1. In the letter, Lehman expressed Twin River's intent to pay the
balance of the Ersa-Grae promissory note by December 31, 1997. Attached to the letter was a
"debt service summary," which credited the amount Lehman had paid the taxing authorities as
a payment against the principal of the Ersa-Grae promissory note. By December 31, however,
no payment had been made toward Ersa-Grae's promissory note and in February 1998, Mahan's
attorney gave notice to Ersa-Grae of Mahan's intent to foreclose on the note by foreclosure sale
on March 3. On March 3, 1998, Mahan purchased Tract 1 at the foreclosure sale for $175,000.

 On June 2, 1998, one year after Lehman purchased the tax lien on Tract 1, Lehman
was authorized to institute a suit to foreclose the tax lien. See id. § 32.06(g). Accordingly, on
June 15, 1998, Lehman filed suit against Mahan to foreclose on the tax lien. The district court
rendered judgment in favor of Lehman against Mahan, clarifying in its conclusions of law that
"[t]he transfer of the tax liens on Tract 1 that Lehman received from the Taxing Authorities on
June 2, 1997, was legal, valid, and effective under section 32.06 of the Texas Property Tax
Code." The court awarded Lehman $112,740.70 in delinquent taxes, accrued penalties, costs,
and interest. The court also imposed a statutory lien upon Mahan's property, giving Lehman the
right to foreclose. Mahan appeals from this judgment. Lehman, as cross-appellant, argues a
single issue on appeal: that he is entitled to recover attorney's fees.


DISCUSSION


 The primary issue on appeal is whether the trial court erred in concluding that the
tax lien transferred to Lehman was valid and enforceable under section 32.06 of the Texas Tax
Code. See id. § 32.06. An appellate court reviews trial court conclusions of law de novo, as
legal questions. Piazza v. City of Granger, 909 S.W.2d 529, 532 (Tex. App.--Austin 1995, no
writ). We will not overturn a conclusion of law unless it is erroneous as a matter of law. Id.

Tax Lien Transfer


 By his first issue, Mahan contends that the transfer of the tax lien on Tract 1 to
Lehman was invalid because Ersa-Grae's authorization for Lehman to purchase the lien was
insufficient in that Ersa-Grae did not own 100% of the subject property. Mahan argues that
because he never gave his authorization to Lehman to purchase the tax lien, the taxing authorities
improperly transferred the lien.

 Section 32.06 provides that a "person may authorize another person to pay the taxes
imposed by a taxing unit on the person's real property." Tex. Tax Code Ann. § 32.06(a). That
section further provides that the "person authorized to pay another's taxes" can secure a transfer
of the taxing authority's tax lien if the person paying the taxes is "a person other than the person
liable for the taxes when imposed." Id. § 32.06(b). At the time the tax lien on Tract 1 was
transferred, Ersa-Grae was the legal owner of Tract 1, as evidenced by a general warranty deed
attesting that Mahan had "GRANTED, SOLD AND CONVEYED and by these presents does
GRANT, SELL AND CONVEY unto ERSA-GRAE CORPORATION . . . that certain tract of
land . . . situated in Williamson County, Texas, containing approximately thirty (30) acres." In
a sworn document describing the property, as required by section 32.06, Ersa-Grae authorized
Lehman to pay taxes, any penalties, and interest on Tract 1 on behalf of Ersa-Grae. See id.
§ 32.06. Pursuant to Ersa-Grae's authorization, Lehman became an "authorized person,"
qualified to pay the delinquent taxes and receive the tax lien with respect to Tract 1.

 Mahan cites both Burkhardt v. Lieberman, 159 S.W.2d 847 (Tex. 1942), and
Young v. Harbin Citrus Groves, Inc., 130 S.W.2d 896 (Tex. Civ. App.--San Antonio 1939, writ
ref'd), for support in arguing that without authorization from all property owners, a third party
who purchases a tax lien is a "mere volunteer" and may not receive a tax lien on such property. 
We agree with the legal proposition articulated in the cases cited by Mahan that one who pays
taxes due on the property of another without any request by the debtor can be seen as a volunteer,
who is not entitled to reimbursement or the transfer of a tax lien. See Burkhardt, 159 S.W.2d at
853. However, these propositions have no bearing on the precise issue in the present case. 
Lehman paid the delinquent taxes due on the entire property because the taxing authorities would
not transfer the tax lien on Tract 1 to him without his doing so; he received a tax lien, however,
only on the thirty acres owned by Ersa-Grae and was therefore a valid transferee as to the lien on
Tract 1. (1)

 The present situation bears similarity to that described in Trimble v. Farmer, 305
S.W.2d 157 (Tex. 1957). That case involved the transfer of a tax lien under article 7345a, the
predecessor to article 32.06 of the Tax Code. Lucy O. Trimble owned an outright nine-tenths
interest in her deceased husband's property and a life estate in the remaining one-tenth interest. 
After her husband's death, Lucy was unable to pay the property taxes, which became delinquent. 
In an effort to avoid foreclosure, Lucy authorized the plaintiff in that case to pay the delinquent
taxes and receive a tax lien on the property. Effie Trimble, owner of the remaining one-tenth
interest, argued that the lien did not cover her one-tenth interest in the property because she did
not consent to such an assignment. The supreme court held that, while Lucy was liable for the
taxes assessed against the whole of the property, including the one-tenth interest in which she
possessed a life estate, "Lucy O. Trimble could not encumber nor convey this one-tenth interest,"
and that being "unable to encumber or convey intervener's one-tenth interest in the property, she
was not an 'owner' of such one-tenth interest so that she could request the taxing authorities to
transfer the tax lien to plaintiff." Id. at 161. This, along with the fact that Effie Trimble did not
authorize a transfer of the tax lien to the plaintiff, meant only that the plaintiff did not have a valid
lien on the one-tenth interest. Id. at 162. Because, however, Lucy authorized the transfer of the
tax lien as to her own nine-tenths interest, the plaintiff did possess "a valid and enforceable lien
upon the nine-tenths interest in the property owned by Lucy O. Trimble." Id.

 Admittedly, the factual situation in Trimble and the present case vary; Mahan and
Ersa-Grae owned separate parcels of the property at issue and not undivided interests in such
property, as was the case in Trimble. The reasoning in Trimble, however, is nonetheless
applicable: one can only authorize another person to pay taxes on, and be transferred the tax lien
to, property of which the authorizing person is the owner. Under such reasoning, the tax lien on
Tract 1 that Lehman received from the taxing authorities was valid and enforceable. Ersa-Grae,
the legal owner of Tract 1, had the authority to request the taxing authorities transfer the tax lien
on that property to Lehman, which Ersa-Grae did. While Lehman paid the delinquent taxes on
the entire eighty-eight acre tract, he received a tax lien only on Tract 1. Had the taxing
authorities transferred a tax lien on the entire eighty-eight acre tract, the lien would, under the
Trimble decision, be invalid, absent Mahan's consent. However, the lien attached only to the
thirty acres owned by Ersa-Grae. Because Ersa-Grae owned this portion of the property and had
the authority to request the taxing authorities transfer a lien as to such property, the tax lien
obtained by Lehman is valid under section 32.06.

 Mahan further challenges the validity of the tax lien by asserting that the lien is
invalid because the delinquent tax compromise and settlement agreement entered into by the taxing
authorities, Mahan, and Twin River showed no taxes due on account 40C, the designation given
to Tract 1 after Ersa-Grae became the legal owner of such property. Thus, Mahan argues, Ersa-Grae did not owe delinquent taxes on Tract 1 and its authorization to Lehman was ineffective. 
A taxpayer is entitled to have each separate tract or parcel of land separately valued and assessed
for taxes, and the tax lien separately fixed upon each so that one tract may not be charged or sold
to satisfy the taxes upon another or other tracts. Travis Cent. Appraisal Dist. v. FM Props.
Operating Co., 947 S.W.2d 724, 731 (Tex. App.--Austin 1997, pet. denied) (citing Richey v.
Moor, 249 S.W. 172, 174 (Tex. 1923)). However, in the present case, the taxes were not
partitioned nor assessed solely against Mahan's parcel.

 While the record reveals that the tax assessor-collectors transferred the delinquent
taxes onto different account numbers for their own bookkeeping purposes, the record also reflects
that before any of the events giving rise to this dispute, the delinquent taxes accrued on and
attached to the entire eighty-eight acre tract, including Tract 1. The tax judgment specifically
described the property against which delinquent taxes had accrued as the entire eighty-eight acres. 
Ersa-Grae thereafter acquired the eastern thirty acres comprising Tract 1, but at no time was the
tract released from the delinquent taxes. Ersa-Grae authorized Lehman to pay the taxes on Tract
1, as provided by section 32.06, and Lehman received a valid tax lien as to that property. We
accordingly overrule Mahan's first issue.

 By his second issue, Mahan argues that Lehman was not a valid transferee under
section 32.06(b) because Lehman was contractually liable to pay the delinquent taxes. See Tex.
Tax Code Ann. § 32.06(b). The relevant portion of section 32.06(b) states that the tax collector
shall certify that the payment of the taxes "has been made by a person other than the person liable
for the taxes when imposed." Id. (emphasis added). Although Mahan argues his first issue by
contending that there were no delinquent taxes owed on Tract 1, under his second issue, Mahan
contends that there were, in fact, delinquent taxes owed on Tract 1 and that Twin River was
contractually liable for such taxes. Mahan further argues that Twin River served as the alter ego
of Lehman, that Lehman was thus individually liable for the delinquent taxes on Tract 1, and that
Lehman was consequently not "a person other than the person liable for the taxes." We overlook
the inconsistency in Mahan's argument but nonetheless find his contention unpersuasive.

 Property taxes are the personal obligation of the person who owns or acquires the
property on January 1 of the year for which the tax is imposed. Id. § 32.07(a) (West Supp.
2001). The record indicates that Mahan owned the subject property on January 1 of all the years
in which the taxes at issue were imposed. In his brief, Mahan concedes that "[a]t the time the
delinquent taxes were assessed on the subject property, Mahan was the sole owner of the
property." Moreover, the district court found that "[a]t the time that he paid such taxes, Lehman
had no personal obligation or debt to Mahan or to the Taxing Authorities." Findings of fact are
reviewed for legal and factual sufficiency of the evidence by the same standards used to review
jury findings. Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d 190, 195 (Tex.
App.--Austin 1992, no writ). The record evidence supports the trial court's finding that Lehman
had no personal obligation to Mahan or the taxing authorities when the taxes were imposed or paid
by Lehman. Because Lehman was not liable for any of the delinquent taxes when they were
imposed, he was a person authorized to pay another's taxes, pursuant to section 32.06(b), and
thereafter became a valid transferee of the tax lien. See Tex. Tax Code Ann. § 32.06(b). We
overrule Mahan's second issue.

 By his third issue, Mahan argues that Lehman is estopped from foreclosing on the
subject property under the doctrine of quasi-estoppel. Quasi-estoppel precludes a party from
accepting the benefits of a transaction and then subsequently taking an inconsistent position to
avoid corresponding obligations or effects. Atkinson Gas Co. v. Albrecht, 878 S.W.2d 236, 240
(Tex. App.--Corpus Christi 1994, writ denied). The doctrine applies when it would be
unconscionable to allow a person to maintain a position inconsistent with one in which he
acquiesced, or of which he accepted a benefit. Stable Energy, L.P. v. Newberry, 999 S.W.2d
538, 548 (Tex. App.--Austin 1999, pet. denied). Under this defensive doctrine, a party is
precluded from asserting a right to the disadvantage of another, where doing so would be
inconsistent with the party's previous position. Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.,
817 S.W.2d 160, 164 (Tex. App.--Houston [14th Dist.] 1991, no writ). 

 Mahan characterizes the inconsistent action at issue as follows: Lehman first
purportedly paid the delinquent taxes and purchased the tax lien in his individual capacity, and
then, on behalf of Twin River, took credit for his payment and attempted to apply that credit to
the principal amount owed to Mahan under the Ersa-Grae promissory note. We do not consider
the merits of Mahan's estoppel argument as we cannot grant the relief Mahan requests. Mahan
urges that "Lehman is estopped from bringing this suit" under the doctrine of quasi-estoppel. 
However, the doctrine merely precludes a party from accepting the benefits of a transaction and
then subsequently taking an inconsistent position to avoid corresponding obligations or effects. 
Atkinson Gas Co., 878 S.W.2d at 240. The appropriate remedy then, assuming without deciding
that Lehman did take an inconsistent position regarding the payment of the delinquent taxes,
would be to disallow him from crediting the amount paid against the principal amount of the
promissory note. The record indicates that, in fact, Lehman did not ultimately apply his
individual payment of the delinquent taxes to the Ersa-Grae promissory note. Instead, Mahan
foreclosed on Ersa-Grae and regained ownership of Tract 1. We overrule Mahan's third issue.


Attorney's Fees


 As cross-appellant, Lehman argues that the district court's conclusions of law
numbers nine and thirteen, which conclude that Lehman is not entitled to attorney's fees, are
erroneous. Section 32.06(h) of the Tax Code provides that the holder of a lien may file a suit to
foreclose the lien and "[i]f the suit results in foreclosure of the lien, the person filing suit is
entitled to recover attorney's fees in an amount not to exceed 10 percent of the judgment." Tex.
Tax Code Ann. § 32.06(h) (emphasis added). Statutes providing that a party "may recover,"
"shall be awarded," or "is entitled to" attorney fees are not discretionary. Bocquet v. Herring,
972 S.W.2d 19, 20 (Tex. 1998). Thus, the award of attorney's fees under section 32.06(h) of the
Tax Code is mandatory. See Tex. Tax Code Ann. § 32.06(h). The amount of an award of
attorney's fees, however, generally rests in the sound discretion of the trial court. Rowley v. Lake
Area Nat'l Bank, 976 S.W.2d 715, 724 (Tex. App.--Houston [1st Dist.] 1998, pet. denied).

 Mahan counters Lehman's argument by asserting that Lehman is not entitled to
recover attorney's fees because he did not sustain his burden in establishing that the requested ten
percent award of attorney's fees under section 32.06(h) is reasonable. Mahan cites Inwood Dad's
Club, Inc. v. Aldine Independent School District, 882 S.W.2d 532, 542 (Tex. App.--Houston [1st
Dist.] 1994, no writ), City of Houston v. First City, 827 S.W.2d 462, 476 (Tex. App.--Houston
[1st Dist.] 1992, writ denied), and Corporate Funding, Inc. v. City of Houston, 686 S.W.2d 630,
631 (Tex. App.--Texarkana 1984, writ ref'd n.r.e.), for the proposition that a party seeking
attorney's fees must prove that the amount requested is reasonable. Those cases all involved the
pre-1993 version of section 33.48 of the Tax Code, which provided that a taxing unit was entitled
to recover "reasonable attorney's fees approved by the court and not exceeding 15 percent of the
total amount of taxes, penalties, and interest adjudged due the unit." Act of May 24, 1979, 66th
Leg., R.S., ch. 841, § 33.48, 1979 Tex. Gen. Laws 2218, 2295 (Tex. Tax Code Ann.
§ 33.48(a)(4), since amended) (emphasis added). The "reasonable" restriction has been removed
from the statute. See Tex. Tax Code Ann. § 33.48(a)(5) (West Supp. 2001). By amending the
statute, the legislature in effect determined that up to fifteen percent is a reasonable fee.

 Section 32.06(h) entitles a party to recover attorney's fees, and Lehman was
therefore entitled to recover fees in pursuing this action. By setting a maximum amount, the
legislature has determined that any amount up to ten percent could be reasonable but left it to the
trial court to decide the appropriate amount in its discretion. The record shows that Lehman's
attorneys spent extensive time in trial preparation and in the trial itself. Lehman paid his attorney
a $4000 fee, plus $150 per hour. Lehman argues that trial time alone would bring the fee to
$7500, and that trial preparation and legal work entailed fees well beyond the ten percent limit;
thus, Lehman argues, he is entitled to the maximum sum. However, the amount of ten percent
is not automatic or mandatory. Lehman was entitled to recover attorney's fees in an amount set
by the trial court not to exceed ten percent of the judgment. See Arthur Anderson & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 818-19 (Tex. 1997) (discussing factors factfinder should consider
when awarding reasonable fee).

 Because the awarding of fees is mandatory but the amount of the award is within
the trial court's discretion, we will remand the cause for the trial court's determination of
attorney's fees. We sustain Lehman's sole complaint.


CONCLUSION

 Having sustained Lehman's sole point of error as cross-appellant, we reverse that
portion of the district court's judgment denying Lehman's recovery of attorney's fees and remand
to the trial court to determine the award of attorney's fees. Having overruled all of Mahan's
points of error, the judgment in all other respects is affirmed.



 
 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed in Part; Reversed and Remanded in Part

Filed: March 15, 2001

Do Not Publish

1. We do not express an opinion as to the status of Lehman to the approximately fifty acres
on which he paid the delinquent taxes without Mahan's consent. Here, we are concerned only
with the validity of the tax lien on the eastern thirty acres, Tract 1, owned by Ersa-Grae.


ntitled to attorney's fees, are
erroneous. Section 32.06(h) of the Tax Code provides that the holder of a lien may file a suit to
foreclose the lien and "[i]f the suit results in foreclosure of the lien, the person filing suit is
entitled to recover attorney's fees in an amount not to exceed 10 percent of the judgment." Tex.
Tax Code Ann. § 32.06(h) (emphasis added). Statutes providing that a party "may recover,"
"shall be awarded," or "is entitled to" attorney fees are not discretionary. Bocquet v. Herring,
972 S.W.2d 19, 20 (Tex. 1998). Thus, the award of attorney's fees under section 32.06(h) of the
Tax Code is mandatory. See Tex. Tax Code Ann. § 32.06(h). The amount of an award of
attorney's fees, however, generally rests in the sound discretion of the trial court. Rowley v. Lake
Area Nat'l Bank, 976 S.W.2d 715, 724 (Tex. App.--Houston [1st Dist.] 1998, pet. denied).

 Mahan counters Lehman's argument by asserting that Lehman is not entitled to
recover attorney's fees because he did not sustain his burden in establishing that the requested ten
percent award of attorney's fees under section 32.06(h) is reasonable. Mahan cites Inwood Dad's
Club, Inc. v. Aldine Independent School District, 882 S.W.2d 532, 542 (Tex. App.--Houston [1st
Dist.] 1994, no writ), City of Houston v. First City, 827 S.W.2d 462, 476 (Tex. App.--Houston
[1st Dist.] 1992, writ denied), and Corporate Funding, Inc. v. City of Houston, 686 S.W.2d 630,
631 (Tex. App.--Texarkana 1984, writ ref'd n.r.e.), for the proposition that a party seeking
attorney's fees must prove that the amount requested is reasonable. Those cases all involved the
pre-1993 version of section 33.48 of the Tax Code, which provided that a taxing unit was entitled
to recover "reasonable attorney's fees approved by the court and not exceeding 15 percent of the
total amount of taxes, penalties, and interest adjudged due the unit." Act of May 24, 1979, 66th
Leg., R.S., ch. 841, § 33.48, 1979 Tex. Gen. Laws 2218, 2295 (Tex. Tax Code Ann.
§ 33.48(a)(4), since amended) (emphasis added). The "reasonable" restriction has been removed
from the statute. See Tex. Tax Code Ann. § 33.48(a)(5) (West Supp. 2001). By amending the
statute, the legislature in effect determined that up to fifteen percent is a reasonable fee.

 Section 32.06(h) entitles a party to recover attorney's fees, and Lehman was
therefore entitled to recover fees in pursuing this action. By setting a maximum amount, the
legislature has determined that any amount up to ten percent could be reasonable but left it to the
trial court to decide the appropriate amount in its discretion. The record shows that Lehman's
attorneys spent extensive time in trial preparation and in the trial itself. Lehman paid his attorney
a $4000 fee, plus $150 per hour. Lehman argues that trial time alone would bring the fee to
$7500, and that trial preparation and legal work entailed fees well beyond the ten percent limit;
thus, Lehman argues, he is entitled to the maximum sum. However, the amount of ten percent
is not automatic or mandatory. Lehman was entitled to recover attorney's fees in an amount set
by the trial court not to exceed ten percent of the judgment. See Arthur Anderson & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 818-19 (Tex. 1997) (discussing factors factfinder should consider
when awarding reasonable fee).

 Because the awarding of fees is mandatory but the amount of the award is within
the trial court's discretion, we will remand the cause for the trial court's determination of
attorney's fees. We sustain Lehman's sole complaint.


CONCLUSION

 Having sustained Lehman's sole point of error as cross-appellant, we reverse that
portion of the district court's judgment denying Lehman's recovery of attorney's fees and remand
to the trial court to determine the award of attorney's fees. Having overruled all of Mahan's
points of error, the judgment in all other respects is affirmed.



 
 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie,